IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | |
|---|---|
| C&A CONSTRUCTION COMPANY, INC., a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DHC DEVELOPMENT, LLC, a Nevada limited liability company, STEVEN P. DANKO, a Nevada resident, and ZIONS FIRST NATIONAL BANK, a national association,<br><br>Defendants. | Civil No. 2:08-CV-258BSJ<br><br>**MEMORANDUM OPINION & ORDER**<br><br>**FILED**<br>CLERK, U.S. DISTRICT COURT<br>June 7, 2011 (4:25pm)<br>DISTRICT OF UTAH |

* * * * * * * * *

On April 2, 2008, Plaintiff C&A Construction Company, Inc. ("C&A") commenced the above-captioned action against Defendants DHC Development, LLC, and Steven P. Danko (collectively "DHC"),[1] for breach of contract and foreclosure of mechanics' lien, among other causes of action, in connection with DHC's termination of a Construction Contract for a Stipulated Sum entered into between C&A and DHC on June 26, 2006 ("the Contract"), for the construction of the Black Diamond Condominiums project at Brian Head, Iron County, Utah. On May 5, 2008, DHC filed an answer and a counterclaim against C&A (dkt. nos. 5, 6, 10).[2] On

---

[1] C&A also named Zions First National Bank solely as a stakeholder defendant holding alternate security under Utah Code Ann. § 38-1-28 in connection with C&A's mechanic's lien foreclosure claim. (*See* Amended Complaint, filed December 18, 2010 (dkt. no. 33), at 2 ¶ 4, 16-17 ¶¶ 97-102.)

[2] DHC also filed a motion to dismiss for lack of jurisdiction (dkt. no. 7), which was heard
(continued...)

December 16, 2008, C&A filed its Amended Complaint (dkt. no. 33).[3]

On July 2, 2009, the court ruled as a matter of law that C&A had "unconditionally waived all claims and lien rights, whatsoever, and for all labor, services, equipment, or materials rented or furnished to the Black Diamond jobsite or Plaintiff, C&A Construction, Inc., on or before December 10,2007," and ordered the reduction of C&A's contractual and mechanics' lien claims reduced by specific amounts; the court, *inter alia*, barred three C&A change orders (nos. 115, 127 & 132) in an amount totaling $453,546. (Order & Declaratory Judgment Re: Partial Summary Judgment—December 10, 2007 Unconditional Waiver and Release, filed July 2, 2009 (dkt. no. 78) ("7/2/09 Order"), at 1 ¶¶ 2, 3-5; *see* Statement of Uncontroverted Facts and Legal Rulings, filed July 2, 2009 (dkt. no. 77, attachment 1 (corrected copy)).)

On January 18, 2010, C&A filed a motion for leave to file a motion for partial summary judgment related to the Black Diamond Condominiums project's completion date and the project's percentage completion as of C&A's termination on March 4, 2008 (dkt. no. 124).[4] On

---

[2](...continued)
by the court and denied. (*See* Minute Entry, dated June 25, 2008 (dkt. no. 17); Order Denying Motion to Dismiss for Lack of Diversity Jurisdiction, filed July 23, 2008 (dkt. no. 18).)

[3]In connection with the lien claims presented in this case, the sum of $1,475,558.93 had been deposited with Zions First National Bank. At a motion hearing on January 21, 2009, counsel stipulated to the release of $353,627.93. (*See* Minute Entry, dated January 21, 2009 (dkt. no. 40); Order Partially Releasing Funds on Deposit, filed January 28, 2009 (dkt. no. 41).)

[4]Though captioned as a motion for leave to file, C&A's January 18th motion was briefed as a motion for summary judgment. (*See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed February 11, 2010 (dkt. no. 140); Affidavit of Steven P. Danko in Opposition to Plaintiff's Motion for Leave to File Motion for Partial Summary Judgment, filed February 11, 2010 (dkt. no. 141); Plaintiff's Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, filed February 15, 2010 (dkt. no. 145).)

March 15, 2010, C&A filed another motion for partial summary judgment asking the Court to determine as a matter of law that DHC wrongfully terminated C&A and caused delays at the Black Diamond Condominiums project (dkt. no. 156).

DHC filed a motion for partial summary judgment on January 30, 2010 (dkt. no. 130),[5] asking the court to rule that C&A's mechanic's lien claim should be limited to amounts claimed in draws 14 and 15 and be reduced by the amounts actually paid by DHC; DHC asserted that it paid $538,290.00 to C&A's subcontractors and suppliers for work performed by such persons prior to C&A's termination from the Project, and that DHC paid $110,918.00 in joint checks and direct payments to C&A with respect to Draw 14. DHC also asserted that C&A's lien claim be reduced by the amount barred by the December 10, 2007 Unconditional Waiver and Release, previously addressed by the court's 7/2/09 Order.

On December 7, 2009, C&A filed a motion under Fed. R. Civ. P. 54(b) asking the Court to overturn its 7/2/09 Order (*See* Rule 54(b) Motion for Revision of Order & Declaratory Judgment, filed December 7, 2009 (dkt. no. 112/113 (corrected motion)).[6]) The Court heard argument on C&A's Rule 54(b) motion in the context of the continuing February 16-17 and March 3 & 23, 2010 Final Pretrial Conference, and again on December 9, 2010, and ultimately

---

[5] DHC's January 30th motion was also captioned as a motion for leave to file, but was briefed as a motion for summary judgment. (*See* Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, filed February 27, 2010 (dkt. no. 149); Reply to Plaintiff's Memorandum in Opposition to Defendants' motion for Partial Summary Judgment, filed March 15, 2010 (dkt. no. 158).)

[6] C&A's memorandum in support of its Rule 54(b) motion appears to have been filed on November 20, 2009 (dkt. no. 109).

denied the same.[7]

C&A then disclosed that it had transferred all of its interest in the claims asserted in this action to another entity, the Black Diamond Construction Trust, through a series of transactions commencing on December 18, 2009; the Black Diamond Construction Trust reportedly transferred its interest in the claims in this matter to the Black Diamond Construction 1 Business Trust on or about November 8, 2010.  (*See* Response to Court Order Given Orally at December 9, 2010 Hearing, filed December 14, 2010 (dkt. no. 206).)  Given those transfers of interest, the trustee of the Black Diamond Construction Trust and the Black Diamond Construction 1 Business Trust itself should be joined as Plaintiffs for purposes of this proceeding.[8]  (*See* Transcript of Hearing, dated February 23, 2011 ("Tr. 2/23/11"), at 4:7-5:3.[9])

Pursuant to Fed. R. Civ. P. 16(c) and DUCivR 16-1(d), a continued Final Pretrial

---

[7]In the meantime, on May 10, 2010, C&A had filed a bankruptcy petition under Chapter 7 of Title 11 of the United States Code.  *See In re C&A Contruction Company, Inc*., Case No. 10-26260 (Bankr. D. Utah).  DHC sought and obtained leave from the 11 U.S.C. § 362(a) automatic stay with respect to its counterclaims against C&A in order to proceed in this action notwithstanding C&A's pending bankruptcy proceeding.  On or about December 13, 2010, the Trustee of the C&A bankruptcy estate certified that the estate "has NOT reserved any rights" with respect to the claims asserted in this action.  ("Trustee's Certification," dated December 13, 2010, Exhibit "A" to Response to Court Order Given Orally at December 9, 2010 Hearing, filed December 14, 2010 (dkt. no. 206).)

The Trustee has thus effectively abandoned C&A's claims pending in this proceeding, and C&A—and its successor(s) in interest—remains the real party in interest as plaintiff in this case.

[8]In effect, the Black Diamond Construction 1 Business Trust is the real party in interest, *see* Fed. R. Civ. P. 17(a)(1), (3).  Reference herein to the claims of "C&A" embraces the interest of the Trust as the real party in interest.

[9]It appears to the court that in fact *two* transcripts of the February 23, 2011 Pretrial Conference have been prepared: one approximately 120 pages in length (dkt. no. 232), and the other approximately 14 pages in length (dkt. no. 233).  References to pages in the latter transcript are indicated by bracketed page numbers, *e.g.*, [13].

Conference was again held on February 23, 2011. At that time, the parties engaged in further discussions of the legal theories and evidence relevant to the claims, defenses and counterclaims pleaded in this action. Based on the Court's review of the parties' proposed Pretrial Order submitted to the Court on January 24, 2011,[10] the pleadings filed and the evidence proffered in this matter, and having considered the arguments of counsel presented at the Final Pretrial Conference, the Court hereby rules as follows:

**1. Any amount now payable to C&A shall be applied as an offset against DHC's counterclaim; C&A's affirmative damages and lien foreclosure claims shall be dismissed on the merits.**

Over the course of several pretrial conferences, successor counsel for C&A articulated several alternative and conflicting theories of recovery, including but not limited to (1) a contractual nonpayment theory which included claims that C&A was underpaid on numerous draw requests and not paid at all on draw requests 14, 15, and 16,[11] leaving a balance owing to C&A of more than $526,000; (2) a "delay" theory under which C&A claims more than $900,000 in damages based on contractual figures establishing costs incident to delay; and (3) an "extra work" theory under which DHC is allegedly responsible for more than $300,000 in work which it requested and which C&A performed, but for which DHC never made payment. Another

---

[10]C&A has presented multiple claims upon which DHC's liability could be based, which substantially overlap each other; DHC in turn asserts claims arising from of DHC's payments made to C&A's various subcontractors and suppliers, charges for repairs done after C&A's removal from the Project, and costs incurred in completing the Project, not mention interest expense and other costs incident to further delay of completion of the project.

[11]Under C&A's pleaded breach of contract claim, C&A claimed damages not less than $1,202,923.15 arising from DHC's alleged failure to make payment to C&A when due, DHC's alleged interference with C&A's performance and its subcontractors, and DHC's wrongful termination of its contract with C&A. (*See* Amended Complaint, filed December 16, 2008 (dkt. no. 33) ("Amd. Cmplt."), at 12 ¶¶ 65-70.)

pleaded theory was rooted in C&A's filing of a mechanics' lien against the Project in the amount of $958,000. (*See* Amd. Cmplt. at 15-16 ¶¶ 89-96 & Exhibit "B".)[12]

At the February 23rd Pretrial Conference, the Court asked C&A to present its "best legal theory as to the damages that you say you are owed." (*See* Tr. 2/23/11 at 81:6-7.) Counsel for C&A responded that its "best theory" was that the Black Diamond Condominium project was ninety-seven percent complete (based on C&A's unsigned Draw Request 16) when DHC terminated C&A, such that C&A's alleged damages were approximately $700,000, less approximately $200,000 in offsets for DHC's lien settlement payments, leaving approximately $500,000 owed to C&A. (Tr. 2/23/11, at 81:10-84:6.)[13]

C&A also proffered its "delay" theory, namely that C&A was owed $962,000 for delays (*see* Tr. 2/23/11, at 12:9-12), based on a calculation of a per diem charge of $2,500 for 385 days. Both DHC (*see* Tr. 2/23/11, at 53:8-14) and the court (*see id.* at 91:13-15) pointed out that framed as such. this theory of recovery was new, having not been previously asserted at the Pretrial Conference—or for that matter on C&A's Draw Request 14. (*See* Tr. 2/23/11, at 94:12-13, 15-16, 95:22-23) (noting that "everybody was happy with Draw 14" and that the $2,500 per

---

[12]Through two previously entered orders, the Court had effectively reduced the amount of C&A's mechanic's lien claim from $958,000 to $352,954. (*See* Order Partially Releasing Funds on Deposit, filed January 28, 2009 (dkt. no. 41) ($210,000 reduction); 7/2/09 Order at 2 ($395,000 reduction).)

C&A had also pleaded a claim for intentional interference by DHC with C&A's contracts with its subcontractors and with C&A's economic relations with other project owners and developers. (*See* Amd. Cmplt. at 17-20 ¶¶ 103-24.) At the Pretrial Conference, the court inquired concerning C&A's facts raising a triable issue as to these claims, but to little or no avail.

[13]As an alternate theory of liability, C&A also indicated, that the Project was ninety-four percent complete at the time of C&A's termination (based on C&A's signed Draw Request 14). Under this theory, C&A would be owed the amount requested on Draw 14, namely $442,000, less any DHC offsets. (Tr. 2/23/11, at 84:1-14.)

diem charge seems inconsistent with C&A's previous theories).[14]) C&A emphasized its nonpayment and delay claims at the Pretrial Conference, arguing that damages attributable to its tortious interference claims would be included in its delay damages because of the overlapping nature of these claims. Each of C&A's theories was examined with great care by the court and counsel in open court and on the record.[15]

During these pretrial conversations, it became clear to the court that while C&A had been paid on multiple draws in an amount totaling $5,183,071.81 as the Contract progressed, multiple subcontractors and suppliers had not been paid by C&A and many had filed mechanic's liens of their own to protect their claims to the construction improvements. In the Contract and in each application for a construction draw, C&A had agreed to pay subcontractors and suppliers, but in many instances this simply had not been done. As a consequence, DHC had paid $538,290.00 to

---

[14]The court has already noted that in March 2007, C&A had provided DHC with a deductive change order in an amount of $70,000 as an acknowledgment of and penalty for C&A's delays at the project (*see* Statement of Uncontroverted Facts and Legal Rulings, filed July 2, 2009 (dkt. no. 77), at 7, 22-23; 7/2/09 Order at 2, 3). The $70,000 deductive change order contradicts C&A's new claim for delays. (*See, e.g.*, Tr. 2/23/11, at 91:13-15, 94:12-16 (claim not included on Draw Request 14).)

Moreover, the court previously barred a change order (no. 115) for an alleged $225,000 in extra supervision at the project. (*See* Statement of Uncontroverted Facts and Legal Rulings, filed July 2, 2009 (dkt. no. 77), at 8 ¶¶ 27-30; *see also* 7/2/09 Order at 2 ¶ 4 (barring change order no. 115).) Both C&A's change order No. 115 and C&A's new claim for delays presented at the February 23rd Pretrial Conference seek to recover for the same alleged items, including the "supervision, insurance, temporary utilities, equipment, cleanup, safety, subsistence, dust control" and other charges C&A now claims comprise its $2,500 per diem damage claim. (*See* Tr, 2/23/11, at 12:24-25, 13:1.) Yet these same charges have previously been barred, albeit at a lesser amount, for the reasons underlying the Court's July 2, 2009 ruling. (*See* 7/2/09 Order at 2 ¶ 4.)

[15]The Court had pressed C&A as to the details of its claim for damages (see, e.g., Tr. 2/23/11, at 11:18-21, 12:2-3, 15:8-13, 16:11-15), but C&A had proffered no specifics other than referencing C&A's Draw Request 14 and unsigned change orders, not indicating which specific work for which C&A had actually paid. (See id. at 12:4-13:12.)

7

C&A's unpaid subcontractors and suppliers in order to obtain the release of their liens on the project.

While completion dates had been extended as a result of change orders, nevertheless C&A's non-payment of subcontractors and suppliers represented a material breach of the Contract. DHC's claim for the $538,290 paid to subcontractors, taken together with claims for the subsequent completion of work ($547,000) and repair of defective work ($262,000) on the project, totaled $1,347,290 claimed against C&A.

**2. Treating C&A's largest damages claim as an offset against DHC's counterclaims, DHC is entitled to judgment against C&A in the amount of $385,290.**

C&A failed to dispute with any particularity any of the out-of-pocket expenditures claimed by DHC, or to point to any significant probative evidence discrediting the evidentiary support proffered in support of DHC's claims. (*See* Tr. 2/23/11, at 70:19-71:13, 82:16-83:5.) The court concluded that there had been a complete failure of the evidence pointed to by C&A to raise triable issues of fact concerning C&A's claims and DHC's counterclaims. (*See* Tr. 2/23/11, at [13]:9-12.) The Court further concluded that even if C&A is credited for the amount asserted to be recoverable under its largest theory of damages, namely C&A's "delay" theory seeking approximately $962,000, offsetting that amount against DHC's claimed out-of-pocket payments for repairing and finishing the project and resolving subcontractors' mechanic's lien claims, *viz.*, $1,347,290, there remained an amount due to DHC from C&A of not less than $385,290. (*See* Tr. 2/23/11, at [13]:2-8, [13]:12-15.)[16] Granting judgment in favor of DHC would enable DHC

---

[16]At the Pretrial Conference, the court referred to a net damages figure of $442,000, based upon *ad hoc* calculations using rounded numbers, *e.g.*, $900,000 representing C&A's largest claimed damages amount. Using the specific figures referenced at the Pretrial Conference and
(continued...)

8

to pursue its claim before the Bankruptcy Court, where C&A's assets are currently in a liquidation proceeding.

**CONCLUSION**

C&A having received full value for its largest claimed damages amount ($962,000) as a set-off against DHC's counterclaims, C&A's claims in this proceeding—including its mechanic's lien foreclosure claim—shall be deemed to be satisfied and extinguished on their merits. DHC is entitled to judgment against C&A in the amount of $385,290, and the release of all remaining alternate security currently on deposit with Zions First National Bank.[17]

For the reasons explained above,

**IT IS ORDERED** that Lynn A. Gilbert, as Trustee of the Black Diamond Construction Trust, and the Black Diamond Construction 1 Business Trust are hereby joined as parties Plaintiff in the above-captioned matter, and shall be bound by the Judgment of this court to be entered herein;

**IT IS FURTHER ORDERED** that Defendant DHC Development, LLC is awarded judgment against Plaintiff C&A Construction Company, Inc. in the amount of $385,290.00, together with its costs of action; and that the claims of Plaintiffs C&A Construction Company, Inc. And its successors in interest shall be dismissed upon the merits, with prejudice; and

---

[16](...continued)
set forth hereinabove, the net amount due to DHC is the $385,290 figure.

[17] The court defers on the question of entry of judgment against Third-Party Defendant PJHM.UTAH a/k/a PJHM Architects, currently in default in this proceeding (*see* Default Certificate re: PJHM Utah Company, filed August 13, 2009 (dkt. no. 91)), pending DHC's filing of an appropriate motion for entry of default judgment or to dismiss. *See* Fed. R. Civ. P. 55(b)(2); Fed. R. Civ. P. 41(a)(2).

**IT IS FURTHER ORDERED** that the remaining funds on deposit with Zions First National Bank as alternate security for Plaintiffs' mechanic's lien claim shall be released to DHC forthwith.

DATED this 7th day of June, 2011.

BY THE COURT:

/s/ Bruce S. Jenkins
BRUCE S. JENKINS
United States Senior District Judge