IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

LYNN A. GILBERT, as Trustee of the ) 
Black Diamond Construction 1 Business )    Civil No. 2:08-CV-258 BSJ
Trust and BLACK DIAMOND )
CONSTRUCTION 1 BUSINESS )
TRUST, )    **MEMORANDUM OPINION**
   )    **& ORDER**
          Plaintiffs, )    **(28 U.S.C. § 455)**
   )
vs. )
   )
DHC DEVELOPMENT, LLC, a Nevada )
limited liability company, STEVEN P. )
DANKO, a Nevada resident, )

       Defendants/Counterclaimants, )

vs. )

C&A CONSTRUCTION COMPANY, )
INC., a Utah corporation, )

       Counterclaim Defendant. )

```
┌─────────────────────────────────────┐
│              FILED                  │
│   CLERK, U.S. DISTRICT COURT         │
│    April 26, 2013 (11:00am)          │
│      DISTRICT OF UTAH                │
└─────────────────────────────────────┘
```

* * * * * * * * *

On November 29, 2012, the Clerk of the Court docketed the court of appeals' mandate in

the above-captioned proceeding,[1] vacating this court's June 2011 summary disposition of the

parties' claims.[2]  After remand, the parties filed a series of motions,[3] including plaintiff's motion

---

[1](*See* Order and Judgment, *C&A Construction Company, et al. v. DHC Development, et al.*, Case No. 11-4139 (10th Cir., decided November 5, 2012).)

[2](*See* Memorandum Opinion & Order, filed June 7, 2011 (CM/ECF No. 234); Judgment, filed June 9, 2011 (CM/ECF No. 236).)

[3](*See* Plaintiff's Motion for Restoration of Alternate Security, filed December 6, 2012 (CM/ECF No. 325); Memorandum in Opposition [sic] to Motion for Restoration of Alternate

(continued...)

for partial summary judgment[4] and "motion for trial date."[5]  The court calendared several of those motions for hearing on February 27, 2013, at which time the court heard argument by counsel and reserved on the matter, awaiting the submission of further briefing as to the validity of the assignment of claims to the current named plaintiffs, Black Diamond Construction 1 Business Trust and its trustee.[6]

Nearly one month later, on March 22, 2013, plaintiffs filed a Motion for Recusal (CM/ECF No. 343) pursuant to 28 U.S.C.S. § 455 (2001).  On April 8th, the defendants/ counterclaimants filed their Memorandum in Opposition to Motion to Reassign Case and for Recusal (CM/ECF No. 347), and on April 25th, plaintiffs' counsel filed a Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion to Reassign Case and for Recusal (CM/ECF No. 350).

Having reviewed and considered the arguments of counsel with respect to the materials submitted by the parties, including the Order and Judgment of the court of appeals, and in light of the record in this case, the court concludes that the plaintiffs' Motion for Recusal should be

---

(...continued)
Security and Cross-Motion for Entry of Orders of Dismissal, filed December 21, 2012 (CM/ECF No. 326); Objection and Motion to Strike Defendants' Cross-Motion for Entry of Orders of Dismissal and Judgment, filed December 21, 2012 (CM/ECF No. 327); Motion for Entry of Orders of Dismissal as to Plaintiffs C&A Construction Company, Inc.; Lynn A. Gilbert, or His Successor, as Trustee of the Black Diamond Construction Trust; and the Black Diamond Construction 1 Business Trust, filed December 28, 2012 (CM/ECF No. 328); Motion for Stay and for Expedited Consideration, filed December 28, 2012 (CM/ECF No. 329).)

[4](Motion for Partial Summary Judgment re Fraudulent Transfer, filed December 28, 2012 (CM/ECF No. 331).)

[5](Motion for Trial Date, filed February 26, 2013 (CM/ECF No. 341).)

[6](*See* Minute Entry, dated February 27, 2013 (CM/ECF No. 342).)

denied.

Pointing to the court of appeals' vacatur of this court's summary disposition of the parties' claims, plaintiff's counsel argues that recusal is warranted "because the Trial Judge has prejudged the facts relating to the Defendants' counterclaims in this matter such that his impartiality 'might reasonably be questioned'" within the meaning of 28 U.S.C.S. § 455(a).[7] Indeed, counsel asserts that "the Trial Judge refuses to acknowledge, among other things, that there is a conflict in the evidence regarding the Defendant's counterclaims," and has requested supplemental briefing concerning the assignment of C&A Construction Company's claims to the current plaintiff "even though the Court of Appeals has also reviewed that history and has concluded that Black Diamond has standing to assert claims against DHC."[8]

**RECUSAL UNDER 28 U.S.C. § 455(a)**

28 U.S.C.S. § 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The court of appeals has held that "[a] judge has a continuing duty to recuse under § 455(a) if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000).

Under § 455(a), judges should apply an objective standard in determining whether to recuse.[9] A judge contemplating recusal should not ask whether he or she believes he or she is

---

[7](Motion for Recusal, filed March 22, 2013 (CM/ECF No. 343) ("Recusal Mot."), at 1.)

[8](*Id.* at 2.)

[9]As the court of appeals has explained:

(continued...)

capable of impartially presiding over the case.  According to our court of appeals,"[t]he test in this circuit is '"whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."'" *United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993) (quoting *United States v. Burger*, 964 F.2d at 1070 (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987))).  Under § 455(a), "a judge has a continuing duty to recuse before, during, or, in some circumstances, after a proceeding, if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality." *Id.* (citing *Liljeberg*, 486 U.S. at 861, *Frates v. Weinshienk*, 882 F.2d 1502, 1505-07 (10th Cir. 1989), *cert. denied*, 494 U.S. 1004 (1990), and *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989)).

> In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue.  See, e.g., *Hall v. Small Business Admin.*, 695 F.2d 175, 179 (5th Cir. 1983); Susan B. Hoekema, Comment, *Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges Under 28 U.S.C. § 455(a)*, 60 Temp. L.Q. 697, 727 (1987). . . .  The standard is purely objective. The inquiry is limited to outward manifestations and

---

[9](...continued)
> This subsection is part of a 1974 amendment to the statute, enacted for the purpose of clarifying and broadening the grounds for judicial disqualification. "The general language of subsection (a) was designed to promote public confidence in the integrity of the judicial process by replacing the subjective ['in the opinion of the judge'] standard with an objective test." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 2202, n. 7, 100 L.Ed.2d 855 (1988). See S.Rep. No. 93- 419 at 1 (1973); H.R. Rep. No. 93-1453 at 1-2 (1974), U.S. Code Cong. & Admin. News 1974, p. 6351.  The subsection "applies to the varied and unpredictable situations not subject to reasonable legislative definition in which judges must act to protect the very appearance of impartiality." *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir.1988). . . .

*United States v. Cooley*, 1 F.3d 985, 992 (10th Cir. 1993).  And Congress amended § 455 in 1974 "to conform with the recently adopted ABA Code of Judicial Conduct, Canon 3C (1974)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7 (1988).

reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question. . . .

*Id.* at 993 (citing *Gipson*, 835 F.2d at 1325; *Willner v. University of Kansas*, 848 F.2d 1023, 1026-27 (10th Cir. 1988); *United States v. Hines*, 696 F.2d 722, 729 (10th Cir. 1982); *In re Allied Signal, Inc.*, 891 F.2d 967, 970 (1st Cir. 1989), *cert. denied*, 495 U.S. 957 (1990)).

"If the issue of whether § 455 requires disqualification is a close one, the judge must be recused." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002); *see Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995).  But the court of appeals has also admonished that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).  "A judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation." *Id.* [10]

---

[10]*See also Cooley*, 1 F.3d at 993-994:

Thus, in addition to other factors, this and other courts have identified various matters arising in cases involving §§ 144, 455(a), or 455(b)(1), which will not ordinarily satisfy the requirements for disqualification under § 455(a): (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters, *United States v. Burger*, 964 F.2d at 1069; *Glass v. Pfeffer*, 849 F.2d at 1267; *Willner v. University of Kansas*, 848 F.2d at 1027; *Hinman v. Rogers*, 831 F.2d at 939-40; *United States v. Hines*, 696 F.2d at 719; (2) the mere fact that a judge has previously expressed an opinion on a point of law, *Leaman v. Ohio Dep't of Mental Retardation*, 825 F.2d 946, 949 n. 1 (6th Cir. 1987); *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976), or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense, *United States v. Gigax*, 605 F.2d at 514; *United States v. Haldeman*, 559 F.2d 31, 134 n. 302 (D.C.Cir. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse, see *Glass v. Pfeffer*, 849 F.2d at 1268; *Green v.*

(continued...)

-5-

It has long been understood that "[t]he alleged bias and prejudice to be disqualifying *must stem from an extrajudicial source* . . . other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (emphasis added).  In *Liteky v. United State*s, 510 U.S. 540, 555 (1994), the Court applied this "extrajudicial source" doctrine under the current language of § 455(a).  Just prior to his second criminal trial, the defendant in *Liteky* moved to disqualify the judge on the ground that the judge displayed "impatience, disregard for the defense and animosity" toward the defendant during an earlier criminal trial.  He cited various comments by the judge, including admonitions of defense witnesses and counsel as well as certain trial rulings.  The Court rejected the contention that recusal was in order:

> First, judicial rulings alone almost never constitute a valid basis for a bias or
> partiality motion. . . . In and of themselves (*i.e.,* apart from surrounding comments
> or accompanying opinion), they cannot possibly show reliance upon an
> extrajudicial source; and can only in the rarest circumstances evidence the degree
> of favoritism or antagonism required . . . when no extrajudicial source is involved.
> *Almost invariably, they are proper grounds for appeal, not for recusal.*  Second,

---

[10](...continued)
*Dorrell*, 969 F.2d 915, 919 (10th Cir.1992); *Willner v. University of Kansas*, 848 F.2d at 1028; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented, see *Frates v. Weinshienk*, 882 F.2d at 1506; (5) baseless personal attacks on or suits against the judge by a party, *United States v. Bray*, 546 F.2d at 858;  (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading;  and (7) threats or other attempts to intimidate the judge. See *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1985); *United States v. Grismore*, 564 F.2d 929, 934 (10th Cir.1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). Finally, we have emphasized that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman*, 831 F.2d at 939.   (Footnotes omitted.)

opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.*

510 U.S. at 555 (emphasis added & citation omitted).

Consistent with *Liteky*, the court of appeals has rarely required judicial disqualification when the alleged partiality did not derive from an "extrajudicial source," *e.g.*, judicial comments concerning a probable outcome based upon information presented within the context of a case. For example, in *United States v. Young*, 45 F.3d 1405, 1414 (10th Cir. 1995), the Tenth Circuit upheld a refusal to recuse even though the district judge opined before trial that "the obvious thing that's going to happen . . . is that she's going to get convicted."  The court of appeals believed the district judge had simply expressed a view of what was likely to happen derived from what he had observed in the case: "Nothing in the remark indicates that the judge was unable or unwilling to carry out his responsibilities impartially." *Id.* at 1416.[11]

Under § 455(a), as the Tenth Circuit explains:

Factors that do not merit disqualification include: rumor, speculation, beliefs, conclusions, or other non-factual matters, *see, e.g.*, *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992); the fact that the judge has previously expressed an opinion on a point of law, *see, e.g.*, *Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 949 n.1 (6th Cir. 1987); and prior rulings that were adverse to the moving party in this proceeding, or in another proceeding, solely because they were adverse, *see, e.g.*, *Green v. Dorrell*, 969 F.2d 915, 919 (10th Cir. 1992).  In addition, in *Sac & Fox* we noted that there

---

[11]Indeed, the most common basis for recusal is when a judge learns something outside of the proceedings before the court which "'result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'"  *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir. 1994), *cert. denied*, 513 U.S. 818 (1994) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *see also Liteky*, 510 U.S. at 551 (noting that extrajudicial source factor is the only common basis upon which to establish disqualifying bias).

was no authority for the proposition that the "time and manner of [the judge's] ruling creates a reasonable doubt about impartiality, absent any other indicia of bias or partiality." 193 F.3d at 1168; . . . .

*Estate of Bishop v. Equinox Intern. Corp.*, 256 F.3d 1050, 1058 (10th Cir. 2001) (quoting *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1168 (10th Cir. 1999)).

"A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."  *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992) (citation omitted).  Under § 455, the movant's "factual allegations need not be taken as true, and" as explained above, "the test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."  *Glass v. Pfeffer*, 849 F.2d 1261, 1268 (10th Cir. 1988) (internal quotation omitted).  The court of appeals instructs that

> disqualification is appropriate only where the reasonable person, *were he to know all the circumstances*, would harbor doubts about the judge's impartiality. *Nichols*, 71 F.3d at 351.  There must be a reasonable factual basis to question the judge's impartiality.  *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). The scope of inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.  *Id.*  Section 455 does not require recusal based only on assumptions about a judge's beliefs that are not substantiated by the facts of record.  See *Nichols*, 71 F.3d at 351; *Bryce v. Episcopal Church*, 289 F.3d 648, 659-60 (10th Cir. 2002).

*In re McCarthey*, 368 F.3d 1266, 1269-1270 (10th Cir. 2004) (emphasis added); *see United States v. Mendoza*, 468 F.3d 1256, 1261 (10th Cir. 2006) (same).

## PLAINTIFFS' ALLEGATIONS UNDER 28 U.S.C. § 455(a)

In this case, the plaintiffs attempt to meet their heavy burden of proof under § 455(a) without relying upon any evidence that this court's alleged lack of impartiality stems from any extrajudicial source.  Instead, they ground their allegations entirely upon the content of the court

-8-

of appeals' Mandate[12] in this case—which vacated this court's prior final judgment reflecting the summary disposition of the parties' remaining claims—and portions of the colloquy between court and counsel at a February 27, 2013 hearing on the parties' pending motions.[13]  Much of the plaintiff's Statement of Facts consists of quoted excerpts from the court of appeals' Order and Judgment,[14] augmented with quoted excerpts from the hearing colloquy.[15]

     The court of appeals' Mandate says what it says, and its import seems clear: this court erred in summarily deciding the parties' remaining claims in the context of a Rule 16 pretrial conference because there existed genuine disputes of material fact warranting a trial on the merits on, *inter alia*, the validity and amount of defendants' counterclaims against C&A Construction.[16] This court's June 9, 2011 Judgment was vacated for that reason, but the court of appeals explicitly declined to rule on the merits of this court's prior partial summary judgment ruling in 2009, as to which plaintiffs had also sought appellate review.[17]

     Nor does the court of appeals' Mandate offer any direct support for plaintiffs' allegations

---

[12](Order and Judgment, *C&A Construction Company, et al. v. DHC Development, et al.*, Case No. 11-4139 (10th Cir., decided November 5, 2012) (CM/ECF No. 324) ("Mandate").)

[13](*See* Minute Entry, dated February 27, 2013 (CM/ECF No. 342); Transcript of Hearing, dated February 27, 2013 ("Tr. 2/27/13").)

[14]Most of the plaintiffs' "statements of fact" paragraphs simply reiterate the parties' arguments at the February 23, 2011 pretrial conference as those arguments were summarized by the court of appeals' Order and Judgment.  (Mandate at 18-21.)  In fact, the court of appeals spent the first twenty-four pages of the Order and Judgment summarizing the parties' claims, legal theories and the procedural history of this case through June of 2011.

[15](Recusal Mot. at 2-10, ¶¶ 4-8; *see also* Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion to Reassign Case and for Recusal, filed April 25, 2013 (CM/ECF No. 350), at 3-17.)

[16](Mandate at 30-34.)

[17](*Id.* at 34-35.)

of lack of impartiality, in contrast to *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358 (10th Cir.

1977), a case cited by plaintiffs' counsel.  In *Webbe*, the court of appeals reversed the district

court's summary judgment and determined that in light of the manner in which summary

judgment had been granted in that case, there was "not a reasonable likelihood that the trial judge

. . . could . . . preside over the trial . . . in a fair and impartial manner" or that, if necessary, he

could try the facts "with detachment and objectivity."  *Id.* at 1361.  No such language is found in

the court of appeals' Order and Judgment in this case.[18]  To the contrary, the court of appeals

expressly declined to examine the 2009 ruling challenged by plaintiffs, explaining that this court

should "remain free to revisit its interlocutory conclusions, if necessary, at any time prior to

entering final judgment," and "declin[ing] to cement the district court's interlocutory order

permanently in place with appellate adhesive,"[19] thus entrusting the question to this court's

discretion on remand.

Reviewing the February 27, 2013 colloquy in its entirety, it seems plainly apparent that

the context of the plaintiffs' quoted excerpts was a brief explanation of this court's reasoning

which led to the June 9, 2011 Judgment that was subsequently vacated by the Mandate—*not* a

preclusive expression of this court's views as to the substantive merits of the parties' respective

claims and evidence post-remand.   This court plainly spoke in the past tense:

---

[18]The same may be said of *Eckles v. Sharman*, 548 F.2d 905 (10th Cir. 1977), also cited
by plaintiffs, in which the court of appeals observed that the trial of the matter had not been
"conducted in an impartial manner" and that the district court's actions indicated that he had "a
strong personal bias and prejudice incompatible 'with the impartiality that litigants have a right
to expect in a United States district court.'"  *Id.*, 548 F.2d at 910, 911 (quoting United States v.
Ritter, 540 F.2d 459, 464 (10 Cir. 1976)).
The court of appeals made no such observation in this case.

[19](Mandate at 35.)

when we were dealing with the question of what is an appropriate way to provide a liquidated figure to be used by whomever in the bankruptcy proceeding, we made inquiry of counsel to give us your best theory as to what you're asking, tell me what you want.  And the best theory, if my memory serves me correct, I haven't gone back to read the record, there was a figure given as to what people could demonstrate in front of the fact finder.  And we indicated, if I remember correctly, let's just assume that to be true, let's assume that to be true.  And then we said, how do you contest the documents and the checks and the material relating to the alleged counterclaims. There was no contest on that. Nothing was presented to in any way dispute what was asserted there.

Based upon the assumption as to the best position of plaintiff at that point and using that as a footing, and assuming that and looking at the absence of any real contest as to the counterclaim material, it was a matter, then, of making a mathematical computation which would enable the party defendant at that point to do what? To file a claim in the bankruptcy court.[20]

The court's explanation of the reasoning behind the prior disposition continued: "as a practical matter there was an assumption as to the best case and an uncontested counterclaim. And while the documentation before the court of appeals was lengthy, I'm sure, and voluminous, I think we made it fairly clear we weren't finding, we were assuming.  We were giving you your best shot in the absence of any genuine contest as to the counterclaim."[21]

Plaintiffs' counsel acknowledged as much at the February 27th hearing:

Your Honor, there is no question in my mind that that's an accurate summary of the proceedings that occurred in this Court.  And I do agree that the Court assumed certain things in favor of the plaintiffs and then gave the benefit of that assumption to the plaintiffs, and made some decisions based on that.

I think where the plaintiffs disagreed with the Court and where the Tenth Circuit agreed with the plaintiffs was with respect to the idea of whether the

---

[20](*See* Tr. 2/27/13, at 35:4-24 (the Court).)  Here the court's comments are quoted verbatim, without the omissions and ellipses set forth in plaintiffs' motion.  (*See* Recusal Mot. at 7-8 ¶ 8.)

[21](Tr. 2/27/13, at 36:3-10 (the Court).)

counterclaim was contested, . . .[22]

Now that selfsame counsel asserts that this court's "accurate summary of proceedings that occurred in this Court" prior to plaintiffs' appeal somehow demonstrates a lack of impartiality going forward in the post-remand context of this case.

As to the contested nature of the defendants' counterclaim, the court inquired about the payments made by defendants to subcontractors which serve as the basis for their counterclaim:

> THE COURT: . . .  Tell me what you've got in reference to the canceled checks, the lien waivers, the releases, all, purportedly, paid out by Danko or his company.

> MR. SUMSION: Your Honor, *the contest is not with respect to whether it was paid*.  The contest is whether those payments should be attributed to bucket one, bucket two, or bucket three, because, remember, what Mr. Danko has done is he has orchestrated the construction of this facility at the cost of not just C&A but also all of the subcontractors that he himself hired to do extra work outside the scope of C&A's work.[23]

Plaintiffs' counsel then argued their view that this court's prior partial summary judgment ruling on wrongful contract termination in 2009 also involves "a jury triable issue," and then returned to the counterclaim dispute a few minutes later:

> MR. WORTHY: I also want to get to the point, though, about the contest of fact that Your Honor talked about.  And like I said, I think that *Your Honor summed up very well the proceedings before the Court*.  But where we disagree -- *we didn't have a problem with the assumption in favor of the plaintiffs in terms of their claims*.  There are some other things that we disagreed about, but I think a core point of disagreement that we raised with the Tenth Circuit and the Tenth Circuit agreed with us about was this idea of a contest on the counterclaims.
> * * * *
> Mr. Sumsion argued before this Court in February of 2011 . . . that the jury could determine that DHC was entitled to no offset if all of its counterclaims should be

---

[22](*Id.* at 37:22-38:6 (Mr. Worthy).)

[23](*Id.* at 39:8-19 (emphasis added).)

-12-

rejected, because DHC wrongfully terminated the  agreement, it improperly
interfered with subcontractors, and it engaged in other improper conduct of the
project.  So just assuming for the sake of argument and discussion, let's say, you
know, that issue were given to the jury and the jury determined that, indeed, DHC
is entitled to no offset, it's entitled to no recovery whatsoever in its counterclaims,
well, that is a major distinction between the assumptions that Your Honor made
with respect to those counterclaims and the assumptions --

> THE COURT: I didn't make an assumption in reference to the
counterclaim. I made an assumption in reference to the plaintiff's substantive
claim. I then dealt with the nature of the evidence that the parties had in reference
to the counterclaim, and particularly within the context of the existence of a
breach that had been determined on the part of the plaintiff.  The inquiry then was
what have you got to counter what they say they've got in the way of documents,
in the way of affidavits, in the way of output. And of course the response there
was of such a nature that there was a determination at that point, absent a real
contest as to the existence of the claim, and thus the failure of plaintiff's claim
and the existence of the counterclaim to assist in the claim process in the
bankruptcy court. Okay. But there we are.[24]

This court's conclusion in June 2011 as to the absence of a genuine factual dispute concerning

the basis for defendants' counterclaim plainly was reversed by the court of appeals, so the

February 27th colloquy now relied upon by plaintiffs' counsel was academic, at best.

At no point during the February 27th hearing did this court even hint at any purpose other

than proceeding in this case in conformity with the Mandate,[25] assuming that the assignment of

---

[24](*Id.* at 45:22-46:6, 47:5-48:7 (emphasis added).)

[25]Having remarked at the February 27th hearing that this court "summed up very well the
proceedings before the Court," plaintiffs' counsel now argues that "notwithstanding the Tenth
Circuit's detailed discussion of the Trial Judge's erroneous directed verdict, factual findings, etc.,
the Trial Judge maintains that his verdict, findings and other prior actions were appropriate," and
worse, that this court "continues to deny the Plaintiffs an opportunity to present facts in support
of their claims," pointing to the same February 27th colloquy.  (Recusal Mot. at 15, 17.)  Yet
both this court and the Tenth Circuit noted that this court's 2011 ruling made no express factual
findings as to the parties' claims.  (*See* Mandate at 29 (noting that "[t]he order failed to make any
findings of fact"); Tr. 2/27/13, at 36:7-8 (the Court) ("I think we made it fairly clear we weren't
finding, we were assuming."); *Id.* at 74:9-10 ("I made no genuine findings as to the best case.");

(continued...)

-13-

C&A Construction's claims to the current plaintiff is legally valid—which, in fact, this court has assumed up to this point[26]—subject to the resolution of the defendants' pending motion to dismiss.[27]   Nothing in this court's comments can fairly be said to "display a deep-seated

---

[25](...continued)
note 21 *supra*, and accompanying text.

This court has said nothing about the post-remand course of this case that purports to bar the plaintiffs from offering any admissible evidence in support of any legally viable claim.  To the contrary, the court expressly anticipated conducting a further pretrial conference "to identify and define with great particularly what it is there is to try," consistent with the court of appeals' Mandate. (Tr. 2/27/13, at 77:23-24 (the Court).)  This court also acknowledged its opportunity to revisit the 2009 partial summary judgment ruling that plaintiffs' counsel insists had embraced triable issues of fact.  (*Id.* at 12:18-14:7.)

[26](*See* Memorandum Opinion & Order, filed June 7, 2011 (CM/ECF No. 234), at 4 & n.8.)

[27]In fact, the February 27th colloquy concluded on this point:

MR. WORTHY: The trust is asserting claims as an assignee, and it is well settled and widely established –

THE COURT: The only claims that you have are these that you purportedly succeeded to?

MR. WORTHY: That's correct. There are no independent claims.

THE COURT: Now counsel suggests that . . .  the assignment is incapable of being given recognition and legitimacy because of the nature of the so-called cause of action.

MR. WORTHY: That's totally wrong.

THE COURT: And you may be correct on that.  He suggests that we ought to be educated in that area. And perhaps since he is the one that raised the question as to the legitimacy of the assignment, we ought to have him speak first and then you respond as to the legitimacy of the so-called assignment.

MR. WORTHY: I think the question is very clear.  I don't think it needs additional briefing. If the Court feels like it needs additional briefing on this issue,

(continued...)

-14-

favoritism or antagonism that would make fair judgment impossible." Indeed, as quoted above, plaintiffs' counsel observed that those comments "summed up very well the proceedings before the Court" prior to remand.

As the *Liteky* Court explained, a court's adverse legal rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required" to justify judicial recusal "when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." 510 U.S. at 555.

---

[27](...continued)
certainly we would be willing to accommodate the Court.

      THE COURT: I think it would be useful.

      MR. WORTHY: Before we get to that point, just briefly, the central mistake that the defendants make with respect to the assignment is it revolves around the difference between the assignment of the contract, which is against the law, and the assignment of a claim for damages arising out of the contract. They are two very different things and the defendants have confused them.

      THE COURT: We'll give you a chance to put that in written form, and in response to the suggestion from counsel.

(Tr. 2/27/13, at 76:3-77:9.) Now plaintiffs' counsel asserts that requesting supplemental briefing on the validity issue itself evidences a lack of impartiality warranting recusal because it "came even though the parties have already spent more than a year on over a dozen pretrial conferences, the parties have repeatedly addressed the history of the assignment of C&A's claims to Plaintiff Black Diamond, and Plaintiff Black Diamond was long ago joined as a party in this action because of its position as an assignee." (Recusal Mot. at 11 ¶ 10; *see id.* at 18-19.) In fact, the current plaintiffs—Black Diamond Construction 1 Business Trust and its trustee—ostensibly received assignment of claims in November 2010 and were first joined as parties by this court's June 7, 2011 Memorandum Opinion & Order (CM/ECF No. 234), a joinder first reflected in this court's June 9, 2011 Judgment (CM/ECF No. 236). The full details of the "history of the assignment of C&A's claims" were not disclosed to this court until December 14, 2010—well *after* several pretrial conferences had been held in this case and a motion for substitution of a prior assignee plaintiff had been submitted by counsel. (*See* Response to Court Order Given Orally at December 9, 2010 Hearing, filed December 14, 2010 (CM/ECF No. 206).)

-15-

Here, this court's June 2011 rulings proved to be proper grounds for plaintiffs' appeal, but fall short of the grounds required for recusal. "[A] reasonable person, knowing all the relevant facts" and circumstances surrounding the court of appeals' Order and Judgment and having reviewed the entire February 27th hearing in this case would not "harbor doubts about the judge's impartiality" as reflected by this record. *United States v. Cooley*, 1 F.3d at 992; *Glass v. Pfeffer*, 849 F.2d at 1268.

**CONCLUSION**

As the court has explained in some detail, the plaintiffs' allegations do not meet their substantial burden to establish a valid basis for judicial disqualification or recusal under 28 U.S.C.S. § 455(a). Concerning whether the court's "impartiality might reasonably be questioned" under § 455(a) in light of the content of this court's prior orders and the court of appeals' Order and Judgment, the *Liteky* standard governs: "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." 510 U.S. at 555. There is no indication on this record that this court had formed an opinion on the merits of the parties' claims on some basis other than what was learned from participation in this case, *i.e.*, some extrajudicial source. Nor do this court's prior rulings or its colloquy with counsel at the February 27, 2013 hearing "display a deep-seated favoritism or antagonism that would make fair judgment impossible," as *Liteky* requires.

The court of appeals has often reminded us that recusal is not to be taken lightly, and that "a judge . . . has 'as strong a duty to sit when there is no legitimate reason to recuse as he does to

-16-

recuse when the law and facts require.'"[28]

For these reasons, therefore,

**IT IS ORDERED** that the plaintiffs' Motion for Recusal (CM/ECF No. 343) is hereby

DENIED.

DATED this ___ day of April, 2013.

BY THE COURT:

_____
BRUCE S. JENKINS
United States Senior District Judge

_____

[28]*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002)
(quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)) *see also Carpenter v. Boeing Co.*,
456 F.3d 1183, 1204 (10th Cir. 2006) (same).

recuse when the law and facts require.'"[28]

For these reasons, therefore,

**IT IS ORDERED** that the plaintiffs' Motion for Recusal (CM/ECF No. 343) is hereby

DENIED.

DATED this 26th day of April, 2013.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

---

[28]*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002)
(quoting *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)) *see also Carpenter v. Boeing Co.*,
456 F.3d 1183, 1204 (10th Cir. 2006) (same).