IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

LYNN A. GILBERT, as Trustee of the        )
Black Diamond Construction 1 Business      )
Trust and BLACK DIAMOND               )
CONSTRUCTION 1 BUSINESS              )      Civil No. 2:08-CV-258 BSJ
TRUST,                            )
                                  )
                Plaintiffs,         )
                                  )
vs.                                )
                                  )      **MEMORANDUM OPINION**
DHC DEVELOPMENT, LLC, a Nevada         )      **& ORDER`**
limited liability company, STEVEN P.       )
DANKO, a citizen of Nevada,             )
                                  )
        Defendants/Counterclaimants,      )
                                  )      ┌─────────────────────────┐
vs.                                )      │        **FILED**          │
                                  )      │ CLERK, U.S. DISTRICT COURT │
C&A CONSTRUCTION COMPANY,          )      │ September 12, 2013 (12:27pm) │
INC., a Utah corporation,              )      │     DISTRICT OF UTAH       │
                                  )      └─────────────────────────┘
            Counterclaim Defendant.      )

\* \* \* \* \* \* \* \* \*

The Clerk of the Court docketed the court of appeals' mandate in the above-captioned

proceeding on November 29, 2012,[1] vacating this court's June 2011 summary disposition of the

parties' claims.[2]  After remand, the parties filed a series of motions,[3] including plaintiffs' motion

---

[1](*See* Order and Judgment, *C&A Construction Company, et al. v. DHC Development, et al.*, Case No. 11-4139 (10th Cir., decided November 5, 2012).)

[2](*See* Memorandum Opinion & Order, filed June 7, 2011 (CM/ECF No. 234); Judgment, filed June 9, 2011 (CM/ECF No. 236).)

[3](*See* Plaintiff's Motion for Restoration of Alternate Security, filed December 6, 2012
                                                        (continued...)

for partial summary judgment[4] and "motion for trial date."[5]  The court calendared several of those motions for hearing on February 27, 2013, at which time the court heard argument by counsel and reserved on the matter, awaiting the submission of further briefing as to the validity of the assignment of claims to the current named plaintiffs, Black Diamond Construction 1 Business Trust and its trustee, Lynn A. Gilbert.[6]

On March 27, 2013, DHC Development, LLC ("DHC") filed its Supplemental Briefing re Legitimacy of Transfers (CM/ECF No. 344).  After an extension of time,[7] plaintiffs filed their Response to Supplemental Briefing re Legitimacy of Transfers on May 10, 2013 (CM/ECF No. 360).

On May 23, 2013, plaintiffs filed a Motion for Partial Summary Judgment (CM/ECF No. 362), again asserting plaintiffs' entitled to judgment as a matter of law on their claims that DHC

_____

(...continued)
(CM/ECF No. 325); Memorandum in Opposition [sic] to Motion for Restoration of Alternate Security and Cross-Motion for Entry of Orders of Dismissal, filed December 21, 2012 (CM/ECF No. 326); Objection and Motion to Strike Defendants' Cross-Motion for Entry of Orders of Dismissal and Judgment, filed December 21, 2012 (CM/ECF No. 327); Motion for Entry of Orders of Dismissal as to Plaintiffs C&A Construction Company, Inc.; Lynn A. Gilbert, or His Successor, as Trustee of the Black Diamond Construction Trust; and the Black Diamond Construction 1 Business Trust, filed December 28, 2012 (CM/ECF No. 328); Motion for Stay and for Expedited Consideration, filed December 28, 2012 (CM/ECF No. 329).)

[4](Motion for Partial Summary Judgment re Fraudulent Transfer, filed December 28, 2012 (CM/ECF No. 331).)

[5](Motion for Trial Date, filed February 26, 2013 (CM/ECF No. 341).)

[6](*See* Minute Entry, dated February 27, 2013 (CM/ECF No. 342).)

[7](*See* Order, filed April 18, 2013 (CM/ECF No. 349).)  In the interim, the plaintiffs had filed a Motion for Recusal (CM/ECF No. 343), which was denied by this court.  (*See* Memorandum Opinion & Order, filed April 26, 2013 (CM/ECF No. 352).)

is liable for breach of contract for nonpayment, providing defective plans and specifications,

dealing directly with C&A Construction Company, Inc.'s ("C&A") subcontractors and hiring

independent subcontractors.[8]   Defendants DHC and Danko requested and were granted an

extension of time to respond to the plaintiffs' May 23rd motion until further order of the court.[9]

Having reviewed and considered the motions, memoranda and exhibits submitted by the

parties, as well as the arguments of counsel at the February 27, 2013 hearing, this court now rules

as follows:

### PLAINTIFFS' MOTION FOR RESTORATION OF ALTERNATE SECURITY

As recounted by the plaintiffs, on or about January 28, 2009, C&A and DHC stipulated to

the deposit of $1,121,931.00 by DHC as "alternate security" for C&A's mechanic's lien claims

against DHC's property pursuant to Utah Code Ann. § 38-1-28.[10]   This escrow deposit at Zions

Bank served as the inducement for C&A to "release its lien and remove its lis pendens" against

DHC's real property.

The amount on deposit at Zions Bank was subsequently reduced to $529,431.00 pursuant

to this court's July 2, 2009 Order & Declaratory Judgment re: Partial Summary Judgment –

---

[8]This motion (and incorporated memorandum in support) reiterates several arguments that previously had been asserted by the plaintiffs, (*see* Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment re Wrongful Termination and Delay, filed March 15, 2010 (CM/ECF No. 157)), but had then been subsumed in this court's summary disposition of the entire matter as reflected in its June 7, 2011 Memorandum Opinion & Order (CM/ECF No. 234).

[9](*See* Order, filed June 19, 2013 (CM/ECF No. 369).)

[10](*See* Motion for Restoration of Alternate Security, filed December 6, 2012 (CM/ECF No. 325), at 2.)  The facts recited in this section are abstracted from the plaintiffs' motion, unless otherwise stated.

December 10, 2007 Unconditional Waiver and Release (CM/ECF No. 78), and that amount remained in escrow until further order of the court.

On June 7, 2011, this court issued its Memorandum Opinion & Order (CM/ECF No. 234) summarily disposing of plaintiffs' claims against DHC and DHC's counterclaim against C&A, which by then was a debtor in bankruptcy.[11]  The court accorded C&A's claims against DHC and Danko the plaintiffs' highest asserted value ($962,000 on plaintiffs' "delay" theory), and then offset that amount against the asserted amount of DHC's counterclaim against C&A, yielding a net claim amount of $385,290 in favor of DHC as against C&A, said sum to then be incorporated in DHC's proof of claim in C&A's Chapter 7 proceeding.  (*Id.* at 8-9.)  Given the net result in favor of DHC, this court's June 7th Memorandum Opinion & Order released to DHC the remaining alternate security ($529,431) held in escrow by Zions Bank.  (*Id.* at 9, 10.) That directive was expressly incorporated into this court's June 9, 2011 Judgment (CM/ECF No. 236) ("The remaining funds on deposit with Zions First National Bank as security fo[r] plaintiffs' mechanic's lien claim shall be released to DHC").

―――――――――――――――――

[11]On or about December 18, 2009, C&A assigned its cause of action against defendants DHC and Danko to Professional Investment Advisors, LC ("PIA") in consideration for PIA's payment of $25,000 to David P. Woolley Drywall, Inc.—which at that time was preparing to execute its own judgment against C&A by sheriff's sale of the C&A/DHC "chose in action" that same day.  (*See* Exhibit "B" to Plaintiff's Motion for Order to Produce Documents Related to Transfer of Defendants' Assets, filed July 12, 2010 (CM/ECF No. 180).)  PIA, as settlor of the Black Diamond Construction Trust, transferred the C&A/DHC "chose in action" into the trust. (Generally, a chose in action is the right to bring an action to recover a debt, money, or thing. *See Black's Law Dictionary* 234 (7th ed. 1999).)

C&A itself received nothing but the partial satisfaction of the Woolley judgment against C&A.  Shortly thereafter, C&A filed its Chapter 7 petition, and Black Diamond Construction Trust subsequently paid $15,000 into C&A's bankruptcy estate in settlement of the Chapter 7 Trustee's avoidance claims relating to the original C&A-PIA assignment.  (*See* Defendants DHC Development, LLC's and Steven P. Danko's Memorandum in Opposition to Plaintiff's Motion for Substitution of Party, filed August 31, 2010 (CM/ECF No. 186), and Exhibit "A" thereto.)

On July 7, 2011, the plaintiffs appealed from that Judgment.

The defendants filed a motion for an award of $337,936 in attorney's fees pursuant to the Utah Mechanic's Lien Statute,  Utah Code Ann. § 38-1-18(1),[12] which was heard by this court on August 17, 2011 and granted, with minor exceptions.[13]

On July 13, 2011, the defendants also filed a Motion for Order to Show Cause re Supersedeas Bond (CM/ECF No. 244), asserting that the plaintiff Trustee "made no effort to satisfy the judgment against the Trusts before leaving the country for three years," and that "the Court should require the Trusts to post a supersedeas bond prior to pursuing any appeal of the money judgment against them," because "[o]therwise, the Court will have to oversee the appointment of a successor Trustee of the Trusts and various execution-related filings by DHC during the appeal period." (*Id.* at 3.)[14]  Plaintiffs responded that Rule 62 of the Federal Rules of Civil Procedure "allows a party who seeks appeal from a final judgment by a lower court to stay the execution of the judgment during the appeal proceedings,"[15] but "a plaintiff is not required to

---

[12](Defendants DHC Development, LLC's and Steven P. Danko's Motion for Award of Attorneys' Fees, filed June 17, 2011 (CM/ECF No. 237).)  The plaintiffs filed no memorandum in opposition to this motion, prompting the defendants to file their Request for Entry of Order Awarding Attorneys' Fees (CM/ECF No. 242), on July 12, 2011.

[13](*See* Minute Entry, dated August 17, 2011 (CM/ECF No. 251); Order, filed August 24, 2011 (CM/ECF No. 257) (awarding attorney's fees in the amount of $328,924.57 against C&A and plaintiffs).)

[14]Defendants submitted that "'[a] party against whom judgment is entered may either satisfy the judgment or post a supersedeas bond,' *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1245 (10th Cir. 2000)," and that the plaintiffs had done neither.

[15]Fed. R. Civ. P. 62(d) reads:

If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except
(continued...)

do so."[16]   Moreover, plaintiffs submitted that "the Tenth Circuit exhaustively described the

purpose of requiring a supersedeas bond before granting a stay in *First Financial Bank v CS*

*Assets*,"[17] in which the court explained that

> [t]he purpose of such a bond is not only to "protect[ ] the prevailing plaintiff from
> the risk of a later uncollectible judgment," but also to "compensate[ ] him for
> delay in the entry of final judgment." *Brinkman v. Department of Corrections of*
> *State of Kan.*, 815 F.Supp. 407, 408 (D. Kan.1993) (citations omitted); *see also*
> *Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d
> 1189, 1190–91 (5th Cir. 1979) ("The purpose of a supersedeas bond is to preserve
> the status quo while protecting the non-appealing party's rights pending appeal. . .
> . [T]he bond secures the prevailing party against any loss sustained as a result of
> being forced to forgo execution on a judgment during the course of an ineffectual
> appeal."); *United States v. Cowan*, 535 F.Supp.2d 1135, 1148 (D. Haw. 2008)
> ("The supersedeas bond is meant to secure the appellee from any resulting loss
> from the stay."); *Perez Rodriguez v. Rey Hernandez*, 304 F. Supp. 2d 227, 229
> (D.P.R.2004) (supersedeas bond requirement "compensates [appellee] for the
> delay in the entry of final judgment").

*First Financial Bank v. CS Assets, LLC*, 2010 WL 3119077, at *2 (S.D. Ala. 2010);[18] *see also*

---

[15](...continued)
in an action described in Rule 62(a)(1) or (2). The bond may be given upon or
after filing the notice of appeal or after obtaining the order allowing the appeal.
The stay takes effect when the court approves the bond.

[16](Response to Defendants Motion For Order to Show Cause re Supersedeas Bond, filed
July 27, 2011 (CM/ECF No. 248), at 2.)

[17](*Id.*)

[18]Contrary to counsel's assertion, the Tenth Circuit did *not* speak in the *CS Assets* case;
the United States District Court for the Southern District of Alabama did.
    Nonetheless, the Fifth Circuit's *Poplar Grove* opinion has been quoted in this Circuit to
the same effect:

> Indeed,

>> [t]he purpose of a supersedeas bond is to preserve the status quo
>> while protecting the non-appealing party's rights pending appeal. A

>> (continued...)

*Eurasia Int'l, Ltd. v. Holman Shipping, Inc.*, 411 F.3d 578, 585 (5th Cir. 2005) ("Fed.R.Civ.P.

62(d) provides that a party is entitled to an automatic stay of proceedings to enforce a judgment

upon appeal when it posts a supersedeas bond."); *Frommert v. Conkright*, 639 F. Supp. 2d 305,

308 (W.D.N.Y. 2009) ("the party posting the bond is entitled to a stay as of right; the court has

no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond"); *New*

*Access Communications LLC v. Qwest Corp.*, 378 F. Supp. 2d 1135, 1138 (D. Minn. 2005) ( "An

appellant may request and obtain a stay of judgment pending appeal as a matter of right upon

posting a supersedeas bond.").

  In the *CS Assets* case, the district court's judgment called for the disbursement back to

First Financial Bank of $3.2 million that it had tendered into the court's registry in furtherance of

its action to redeem certain real property under Alabama law.  *First Financial Bank v. CS Assets,*

*LLC*, 678 F. Supp. 2d 1216 (S.D. Ala. Jan 13, 2010).  The bank had initially sought to redeem the

property, but after the redemption price was judicially set, First Financial Bank reversed course,

---

[18](...continued)

> judgment debtor who wishes to appeal may use the bond to avoid
> the risk of satisfying the judgment only to find that restitution is
> impossible after reversal on appeal. At the same time, the bond
> secures the prevailing party against any loss sustained as a result of
> being forced to forgo execution on a judgment during the course of
> an ineffectual appeal.

*Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d
1189, 1190-91 (5th Cir. 1979) . . . .

*Grubb v. Federal Deposit Ins. Corp.*, 833 F.2d 222, 228 (10th Cir. 1987) (Moore, J., dissenting)
(emphasis omitted); *see id.* at 226 (majority opinion) (discussing "the rationale for requiring a
bond pending appeal, which is to secure the judgment throughout the appeal process against the
possibility of the judgment debtor's insolvency" (citing *Poplar Grove*)); *Miami Intern. Realty
Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) (same).

voluntarily dismissed its action and requested the return of the $3.2 million in registry funds.  CS Assets objected to the disbursement, and the court responded: "if CS Assets desires a stay of rulings allowing First Financial to take a voluntary dismissal and to recover the $3.2 million in tendered funds, then it may obtain one as of right upon payment of adequate supersedeas bond approved by the Court." 2010 WL 3119077, at *2.  CS Assets posted no supersedeas bond, the district court denied a stay of the judgment, and the registry funds were disbursed to the bank.[19]

Here, the plaintiffs urged denial of the defendants' motion because "Defendants can not require Plaintiffs to secure a supersedeas bond unless Plaintiffs move the court to stay the execution of a judgment"—relief which the plaintiffs did not request in initiating their appeal.[20]

The defendants' motion was also considered at the August 17th hearing; the court denied the motion and did not require the plaintiffs to post a supersedeas bond.[21]

No supersedeas bond was posted by plaintiffs.  DHC applied for issuance of a writ of execution and sought post-judgment discovery in furtherance of executing its judgment.[22]  The

---

[19]The district court's orders were affirmed on appeal.  *First Financial Bank v. CS Assets, LLC*, 434 Fed. Appx. 897 (11th Cir. 2011).

[20](Response to Defendants Motion for Order to Show Cause re Supersedeas Bond, filed July 27, 2011 (CM/ECF No. 248), at 5.)  The Plaintiffs subsequently filed a "Motion for Order re Enforcement of Judgment" on October 10, 2011 (CM/ECF No. 274), that would prohibit DHC from enforcing its judgment against anyone other than C&A.  That motion was heard on November 21, 2011, and denied.  (*See* Minute Entry, dated November 21, 2011 (CM/ECF No. 284); Order re Motion to Prohibit Certain Collection Activities, filed November 30, 2011 (CM/ECF No. 285).)

[21](*See* Minute Entry, dated August 17, 2011 (CM/ECF No. 251); Order, filed August 24, 2011 (CM/ECF No. 256).)

[22](*See* Application for Writ of Execution, filed August 18, 2011 (CM/ECF No. 250); Defendants DHC Development, LLC's and Steven P. Danko's Motion to Compel Post-judgment
(continued...)

plaintiffs and related entities sought to constrain DHC's efforts to enforce its judgment,[23] but at

no time did the plaintiffs seek to delay the release and disbursement of the escrow funds held by

Zions Bank.

      As recounted above, this court received the court of appeals' mandate on November 29,

2012, vacating this court's June 2011 summary disposition of the parties' claims.  A week later,

the plaintiffs filed their Motion for Restoration of Alternate Security (CM/ECF No. 325), seeking

"an order requiring Defendant DHC to place in escrow with Zions Bank (or another suitable

---

[22](...continued)
Discovery Responses, filed August 23, 2011 (CM/ECF No. 254); Motion and Order for
Supplemental Proceedings, filed October 31, 2011 (CM/ECF No. 281).  The defendants
subsequently withdrew the motion to compel.  (*See* Notice of Withdrawal of Defendants DHC
Development, LLC's and Steven P. Danko's Motion to Compel Postjudgment Discovery
Responses (Responses Received), filed September 6, 2011 (CM/ECF No. 261).)  Then they filed
another one, together with a second motion for supplemental proceedings. (*See* Defendant DHC
Development, LLC'S Motion to Compel Postjudgment Discovery Responses, filed December 16,
2011 (CM/ECF No. 287); Motion and Order for Supplemental Proceedings, filed December 16,
2011 (CM/ECF No. 289).)  DHC's second motion to compel and for supplemental proceedings
were heard on July 2, 2012, and denied by the court.  (*See* Minute Entry, dated July 2, 2012
(CM/ECF No. 321); Order re Defendant DHC Development, LLC's Motions to Compel
Post-Judgment Discovery Responses, filed July 11, 2012 (CM/ECF No. 322).)

[23](*See* Motion to Intervene for the Limited Purpose of Opposing Application for Writ of
Execution, and Objection to Application for Writ of Execution (by nonparties Professional
Investment Advisors, LC & Sun Hill Construction Trust), filed September 6, 2011 (CM/ECF No.
260); Supplemental Motion to Intervene for the Limited Purpose of Opposing Application for
Writ of Execution, and Objection to Application for Writ of Execution (by nonparties
Professional Investment Advisors, LC & Sun Hill Construction Trust), filed September 29, 2011
(CM/ECF No. 269); Motion for Order re Enforcement of Judgment, filed October 10, 2011
(CM/ECF No. 274)).  The motion to intervene was subsequently withdrawn (CM/ECF No. 273),
and the plaintiffs' motion to limit enforcement of DHC's writ of execution against any other
entity than C&A was heard and denied by this court.  (*See* Minute Entry, dated November 21,
2011 (CM/ECF No. 284); Order re: Motion to Prohibit Certain Collection Activities, filed
November 30, 2011 (CM/ECF No. 285).)  PIA then filed a motion to quash a subpoena
(CM/ECF No. 303), which was heard and granted by the court. (*See* Minute Entry, dated March
12, 2012 (CM/ECF No. 313; Order Granting Motion to Quash Subpoena Duces Tecum to
Professional Investment Advisors, L.C., filed March 21, 2012 (CM/ECF No. 312).)

agent) the sum of no less than $1,121,931.00," as alternate security for their mechanic's lien claims.

The plaintiffs, who had so emphatically declined to post a supersedeas bond when prompted to do so by the defendants, now argue that the court of appeals' ruling yields the same result as if they had posted such a bond—the preservation of the status quo as of the time that this court's June 9, 2011 Judgment was entered:

> A "vacated judgment is of no further force or effect." *United States v. Williams*, 904 F.2d 7, 8 (7th Cir. 1990).  In fact, when a judgment is vacated, "the effect is to nullify the judgment entirely and place the parties in the position" in which they were before the judgment was entered. *See id.*; *see also Phebus v. Dunford*, 198 P.2d 973, 974 (1948) ("A reversal of a judgment or decision of a lower court . . . places the case in the position it was before the lower court rendered that judgment or decision.").  In this case, prior to entry of this Court's June 2011 Judgment, the Plaintiff's mechanic's lien claim was secured, not by a standard notice of lien, but by a cash deposit in escrow with Zions Bank in the amount of $529,431.00.[24]

Moreover, the plaintiffs, being dissatisfied with the status quo circa June of 2011, ask this court to dial the clock back even further—to July 2009, when pursuant to a partial summary judgment, this court entered an order authorizing the release of $592,500 of the original $1,121,931 deposited in escrow.[25]  Yet the court of appeals expressly did not vacate this court's "Order & Declaratory Judgment re: Partial Summary Judgment – December 10, 2007 Unconditional Waiver and Release," entered July 7, 2009 (CM/ECF No. 78).[26]  It simply observed that this

---

[24](Motion for Restoration of Alternate Security, filed December 6, 2012 (CM/ECF No. 325), at 4.)

[25](*Id.* at 6 (arguing that "the Defendants should also be required to restore the alternate security funds to the level at which they stood prior to the July 2009 Judgment").)

[26](*See* Order and Judgment, *C&A Construction Company, et al. v. DHC Development, et* (continued...)

-10-

court should "remain free to revisit its interlocutory conclusions, if necessary, at any time prior to entering final judgment" and resolving the triable matters now before this court after remand.[27] Nevertheless,  the plaintiffs insist that they are

> currently entitled to the statutory security contemplated by Utah Code § 38-1-28 and the Defendants should be required not only to restore the $529,431.00 which was released to them pursuant to this Court's June 2011 Judgment, but also the $592,500.00 which was released to them pursuant to the Court's July 2009 Judgment, leaving a total of §1,121,931.00 in cash on deposit.[28]

The defendants responded that the court of appeals' Order and Judgment "was extremely limited in its scope, with the Tenth Circuit opting not to disturb *any* of this Court's findings and rulings (other than the money judgment) despite the plaintiffs' appeal fully addressing those findings and rulings."[29]  It does not appear that the question of alternate security was raised on appeal or addressed in the court of appeals' Order and Judgment.

---

[26](...continued)
*al.*, Case No. 11-4139 (10th Cir., decided November 5, 2012), at 35 (stating that "we decline to pass judgment on the correctness of the district court's interlocutory partial summary judgment order").)

[27](*Id.* at 38.)

[28](Motion for Restoration of Alternate Security, filed December 6, 2012 (CM/ECF No. 325), at 7.)

[29](Memorandum in Opposition to Motion for Restoration of Alternate Security and Cross-Motion for Entry of Orders of Dismissal, filed December 21, 2012 (CM/ECF No. 326), at 6 (emphasis in original).)  The defendants also point out that

> the [Black Diamond Construction 1] Business Trust was not even a party to this action until the day judgment was entered, when it was joined as part of the Court's final order and judgment.  If everything were to be "returned" to the same status as before judgment was entered, the Business Trust would not be a party.

(*Id.* at 8.)  Under the plaintiffs' reading of the sweeping effect of the court of appeals' vacatur of this court's June 9, 2011 Judgment, the defendants may have a point.

-11-

In this Circuit, and others, "'"[a] judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel."'" *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 35 F.3d 1466, 1469 (10th Cir. 1994) (quoting *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988) (quoting 1B *Moore's Federal Practice* ¶ 0.416[2], at 517 (1984))); *see* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4432, at 63-70 (2002 & Supp. 2013).

If the plaintiffs wished to maintain the alternate security escrow funds on deposit at Zions Bank pending the outcome of their appeal, the mechanism for doing so was obvious: post a supersedeas bond staying the enforcement of this court's June 9, 2011 Judgment.[30]  Plainly cognizant that "'[t[he purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal,'"[31] the plaintiffs steadfastly rejected the defendants' request that they post such a bond, instead giving the green light to enforcement

---

[30]As explained above, the purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal, *Poplar Grove*, 600 F.2d at 1190-91, and "[i]t is within the court's discretion to fashion a security arrangement that protects the rights of both the judgment creditor and the judgment debtor." *Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1498 (11th Cir. 1986) (citing *Poplar Grove*, 600 F.2d at 1191). In the *Boyd* case, the court noted that "[i]f the district court had retained custody of the insurance proceeds during this appeal, the court would have preserved the status quo and prevented the risk that appellant, had she prevailed, would have been unable to collect her award." *Id.*  But the district court in *Boyd* denied supersedeas and disbursed the interpleaded funds to the prevailing party over the appellant's objections.

 As the court admonished in the *CS Assets* opinion, "If CS Assets wishes to obtain a stay of this Court's rulings pending appeal and to forestall the immediate disbursement of funds to First Financial, it must timely post a bond" in the amount set by that court.  2010 WL 3119077, at *5.  Here, the plaintiffs posted no supersedeas bond and requested no stay of enforcement to keep the escrow funds on deposit during the pendency of their appeal.

[31](Response to Defendants Motion For Order to Show Cause re Supersedeas Bond, filed July 27, 2011 (CM/ECF No. 248), at 2 (quoting *Poplar Grove*, 600 F.2d at 1190).)

of the June 9, 2011 Judgment as written.  Plaintiffs' counsel emphasized that "Plaintiffs have not sought a stay of execution of the final judgment entered against them under FRCP 62(d). Defendants are unimpeded in the execution of their judgment against Plaintiffs," and again that "Plaintiffs have not sought to prevent Defendants from collecting on the final judgment in Defendants favor by seeking a stay of execution."[32]

Having taken that position, the plaintiffs now ask to reverse the course of events that occurred as part of the defendants' enforcement of this court's June 9, 2011 Judgment, seeking to restore a post-judgment status quo in this case that likely would have been maintained had the plaintiffs actually posted a supersedeas bond—as the defendants originally implored them to do. By electing not to stay enforcement by posting such a bond, the plaintiffs assumed the risk that, should they prevail on appeal, they would be unable to satisfy their claims by drawing upon the $529,431 still held in escrow when the June 9, 2011 Judgment was entered.[33]

By the vacatur of this court's June 9, 2011 Judgment, the same was "'thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel,'" *United States v. Lacey*, 982 F.2d 410, 412 (10th Cir. 1992) (quoting 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.416[2], at 517 (2d ed. 1992)), as well as law of the case.  *Johnson v. Chicago Board of Educ.*,

---

[32](Response to Defendants Motion for Order to Show Cause re Supersedeas Bond, filed July 27, 2011 (CM/ECF No. 248), at 3, 4.)

[33]Plaintiffs also seek restoration of the $592,500 in alternate security disbursed two years earlier pursuant to a prior order that was *not* vacated by the court of appeals, though the plaintiffs plainly wish that it was.  (*See* Motion for Restoration of Alternate Security, filed December 6, 2012 (CM/ECF No. 325), at 7 (asserting that "the Tenth Circuit agrees that the Plaintiff is entitled to raise issues relating to the December 2007 lien waiver at trial and, if necessary in light of the evidence presented and the facts found at trial, that this Court should revise its interlocutory conclusions regarding the effect of the December 2007 lien waiver").)

457 U.S. 52, 53–54 (1982).  But a vacatur cannot undo history, or operate as a retroactive stay of enforcement of the June 9, 2011 Judgment where none was requested by the plaintiffs.

For the foregoing reasons, the plaintiffs' Motion for Restoration of Alternate Security (CM/ECF No. 325) is denied.[34]

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FRAUDULENT TRANSFER

On December 28, 2012, the plaintiffs filed a Motion for Partial Summary Judgment re Fraudulent Transfer, seeking a declaration that DHC's transfer of assets to Black Diamond Developers, LLC in September and November of 2008 "were fraudulent as to all of Defendant DHC's creditors whose claims arose either before or after the transfers," including the plaintiffs' assignor C&A, and asking this court "to enjoin both Defendant DHC and Black Diamond Developers from any further transfer, sale, assignment, or other disposition of any of the DHC Assets " pursuant to the Utah Uniform Fraudulent Transfer Act, Utah Code Ann. §§ 25-6-1 *et seq.* ("UTFA").[35]

The plaintiffs assert that "the transfers of assets from Defendant DHC to Black

_____

[34]The plaintiffs' Objection and Motion to Strike Defendants' Cross-motion for Entry of Orders of Dismissal and Judgment, filed December 21, 2012 (CM/ECF No. 327), is also denied. The plaintiffs' point concerning amended Local Rule DUCivR 7-1(b)(1)(A) was well taken, and the defendants' purported "Cross-Motion for Entry of Orders of Dismissal" set forth in their responsive memorandum thus has no force or effect; and the same is denied.  The defendants' Motion for Stay and for Expedited Consideration, filed December 28, 2012 (CM/ECF No. 329), is also denied.

[35](Motion for Partial Summary Judgment re Fraudulent Transfer, filed December 28, 2012 (CM/ECF No. 331), at 11.)

-14-

Diamond Developers were fraudulent under both Utah Code § 25-6-5 and Utah Code § 25-6-6."[36]
A "transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor
made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any
creditor of the debtor," Utah Code Ann. § 25-6-5(1)(a), or "if the debtor made the transfer . . .
without receiving a reasonably equivalent value in exchange for the transfer . . . ; and the debtor .
. . was engaged or was about to engage in a business or a transaction for which the remaining
assets of the debtor were unreasonably small in relation to the business or transaction," Utah
Code Ann. § 25-6-5(1)(b).[37]   A transfer may also be fraudulent as to pre-transfer creditors if "the
debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the
transfer" and "the debtor was insolvent at the time or became insolvent as a result of the
transfer," Utah Code Ann. § 25-6-6.[38]  Plaintiffs insist that DHC's transfers of assets to Black
Diamond Developers, LLC in September and November of 2008 met all of these statutory

---

[36](*Id.* at 5.)

[37](*Id.* at 5, 9.)  Under Utah Code Ann. § 25-6-5(1)(a),

consideration may be given to, among other things, whether:
a) the transfer was to an insider;
b) the debtor retained possession or control of the property transferred after the
transfer;
c) before the transfer was made the debtor had been sued or threatened with suit;
d) the transfer was of substantially all the debtor's assets;
e) the value of the consideration received by the debtor was reasonably equivalent
to the value of the asset transferred or the amount of the obligation incurred; and
f) the debtor was insolvent or became insolvent shortly after the transfer was
made.

(*Id.* at 5-6.)

[38](*Id.* at 10.)

criteria.[39]  They point to the UFTA's remedy provisions, which authorize "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property" and "any other relief the circumstances may require," Utah Code Ann. § 25-6-8(1), and ask this court "to enjoin both Defendant DHC and Black Diamond Developers from any further transfer, sale, assignment, or other disposition of any of the DHC Assets."[40]

DHC's response memorandum disputes many of the plaintiffs' key factual assertions and the evidence they cite in support, asserting that Black Diamond Developers paid DHC for the transfers using the proceeds of a significant bank loan, not merely the "ten dollars" recited in the deeds themselves.[41]  DHC also disputes the legal footing for plaintiffs' claims under the UFTA.[42] On the whole, DHC's response suggests that the plaintiffs have failed to meet their initial burden under Rule 56 to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The plaintiffs' motion also seems beset with more fundamental defects.  First, the plaintiffs' Amended Complaint pleads nine causes of action against DHC and Mr. Danko—none of which is a claim of fraudulent transfer under the UFTA.  Nor have the plaintiffs joined the named transferee, Black Diamond Development, LLC, as a party defendant to this action at any stage of this proceeding.

---

[39](*Id.* at 6-10.)

[40](*Id.* at 11.)

[41](Memorandum in Opposition to Motion for Partial Summary Judgment re Fraudulent Transfer, filed January 29, 2013 (CM/ECF No. 339), at 3-7.)

[42](*Id.* at 9-11.)

It seems abundantly clear under Utah law that a claim of fraudulent transfer is not merely a civil judgment collection remedy; such a claim constitutes "a cause of action cognizable at law or equity subject to the full array of due process associated with a civil action." *Brigham Young University v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 45, 156 P.3d 782, 791.[43]  In *Tremco*, the Utah Supreme Court elaborated upon this point in some detail:

> No principle is more fundamental to the integrity of a society that claims allegiance to the rule of law than the principle that a person may not be deprived of his property without first being afforded due process of law. This guarantee is enshrined in both the United States Constitution and the Constitution of Utah. U.S. Const. amend. XIV, § 1; Utah Const. art. I, § 7. That due process of law is owed in every instance is a self-evident proposition.  Measuring the amount of process that is due in any particular setting is more difficult.  Nevertheless, "[w]e long ago succinctly summarized the fundamental features of due process, observing that it requires that notice be given to the person whose rights are to be affected. It hears before it condemns, proceeds upon inquiry, and renders judgment only after trial." *Pangea Techs., Inc. v. Internet Promotions, Inc.*, 2004 UT 40, ¶ 8, 94 P.3d 257 (internal quotation marks omitted).  The bare essentials of due process thus mandate adequate notice to those with an interest in the matter

---

[43] *See also Macris & Associates, Inc. v. Neways, Inc.*, 2002 UT App 406, ¶ 16, 60 P.3d 1176, 1179 (discussing "[t]he cause of action for fraudulent transfer"); *Cause of Action to Set Aside or Recover for Fraudulent Transfer or Obligation Under Uniform Fraudulent Transfer Act*, 55 Causes of Action 2d 467 (2012). Indeed,

> The law has long held that transfers of property designed to place a debtor's assets beyond the reach of the debtor's creditors are void as to the creditors. *See, e.g.*, 13 Elizabeth 1 (1570) Ch. 5; *Twyne's Case*, 3 Coke 80a, 76 Eng. Rep. 809 (1601); *Clements v. Moore*, 73 U.S. (6 Wall.) 299, 312, 18 L.Ed. 786 (1867); *Smith v. Holland*, 298 Ky. 598, 603–604, 183 S.W.2d 647, 649 (Ky.Ct.App.1944); *Rainier National Bank v. McCracken*, 26 Wash.App. 498, 505–506, 615 P.2d 469, 474 (1980). Utah's Fraudulent Conveyance Act, § 25–1–1, *et seq.*, establishes several different grounds for setting aside a debtor's transfer of property as a fraudulent conveyance.

*Butler v. Wilkinson*, 740 P.2d 1244, 1260 (Utah 1987) (footnote omitted).  "The Uniform Fraudulent Conveyance Act, which was enacted in this state in 1925, codified the common law. 37 Am. Jur. 2d, *Fraudulent Conveyances* § 88, at 772 (1968). *See* 1925 Laws of Utah ch. 42." *Id.* at 1261 n.11.

and an opportunity for them to be heard in a meaningful manner.  *See Chen v. Stewart*, 2004 UT 82, ¶ 68, 100 P.3d 1177.

The Utah Rules of Civil Procedure owe their existence to the constitutional guarantee of due process of law. They "[are] designed to provide a pattern of regularity of procedure which the parties and the courts [can] follow and rely upon."  *Gillett v. Price*, 2006 UT 24, ¶ 13, 135 P.3d 861 (brackets in original) (internal quotation marks omitted).  Our rules of civil procedure lend operational expression to the abstract constitutional promise of due process.  To those who pursue civil actions in conformity with the rules of civil procedure, we extend the right to invoke the coercive power of the state to seize property or to command a party to conform its conduct to the court's decrees.

. . . The due process issue presented to us and our analysis of it rest on a framework of two procedural facts. First, Duncan et al. were not named parties in any of the iterations of this case, not the original action BYU brought against SoftSolutions, not the lawsuit BYU brought against Tremco, and not in the litigation's final consolidated formulation. Second, nowhere in the vastness of the record of these cases does BYU state a cause of action against any of the Duncan individuals or entities.  Rather BYU presumes that Duncan et al. merely stand in the shoes of the true judgment debtor—SoftSolutions.  Nevertheless, Duncan et al. face the coerced deprivation of property which they claim to be theirs, not SoftSolutions, without ever having a civil action brought against them.

In most instances, the guarantee of due process prohibits the enforcement of a money judgment against a person who has not been designated a party or served with process.  *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L. Ed. 2d 76 (1996).  Absent due process, a court wields no power over an individual because a court only acquires jurisdiction over a party through proper service of process, which provides notice to the defendant that he is being sued and that he must appear and defend himself.  *Meyers v. Interwest Corp.*, 632 P.2d 879, 880 (Utah 1981).  Although Duncan et al. have clearly been aware of litigation swirling about them for some time, they have never been called upon to defend their interests in the manner afforded a defendant in a civil action.

2007 UT 17, at ¶¶ 28-31, 156 P.3d at 788-89.  In *Tremco*, the court rejected the plaintiff's

assertion that the "Duncan et al." nonparties "were not entitled to due process because

BYU was simply pursuing property of [the judgment debtor] that could be traced to Duncan et

al.":

Property in the possession of an unnamed party to a lawsuit may fall prey to a judgment creditor under two general principles.  The first focuses on the relationship between the judgment debtor and the nonparty target of the collection action. Where the identities of debtor and the third party merge in the eyes of the law, liability for the judgment may extend to the third party.  Alter ego and allied rationales for disregarding the corporate form are the most prominent examples of legal doctrines of this type.  The second principle directs its attention to the character of the target property.  An action which alleges that a judgment debtor has fraudulently transferred property to a third party is an example of a circumstance in which the destination of property rather than the identity of parties results in an extension of liability beyond the named judgment debtor. However, we are aware of no cause of action derived from either principle that can be enforced against an unnamed party in a post-judgment collection action.

Alter ego is a common law doctrine deeply rooted in our corporate law jurisprudence.  *See, e.g.*, *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, 84 P.3d 1154; *Amoss v. Bennion*, 420 P.2d 47, 49 (Utah 1966); *In re Madsen's Estate*, 123 Utah 327, 259 P.2d 595 (1953).  Our legislature has codified the law governing fraudulent transfers, providing detailed and comprehensive guidance regarding both substantive elements of fraudulent transfers and procedural prerequisites, such as a statute of limitations specific to fraudulent transfers.  In light of the status conferred through the development of the common law and legislative action upon alter ego and fraudulent transfer, *it is apparent that a claim founded on either theory is a civil action that must be prosecuted in the manner prescribed in the Utah Rules of Civil Procedure, commencing with the filing of a summons and complaint* and not the abbreviated post-judgment collection procedures of rule 69.  *McBride–Williams v. Huard*, 2004 UT 21, 94 P.3d 175 (stating that a civil action is commenced under rule 3 of the Utah Rules of Civil Procedure by filing a complaint with the court or by serving a summons on the defendant with a copy of the complaint).

*Id.* at ¶¶ 34, 37-39, 156 P.3d at 789-90 (emphasis added).

Civil proceedings in a federal district court must be informed by these same due process

concerns.  *See, e.g., Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465-68 (2000).  Like the Duncan

nonparties in *Tremco*, DHC's alleged transferee, Black Diamond Developers, LLC, has not been

named as a party defendant in this case at any stage of the proceeding, and "nowhere in the

vastness of the record" in this case do the plaintiffs "state a cause of action against" Black

Diamond Developers, LLC for fraudulent transfer, alter ego, or other theory of liability for DHC's debts.  "Such a cause of action must then be prosecuted in a civil action commenced by the filing of a complaint and including the right of a defendant to receive service of process, conduct discovery, enjoy the protections afforded by a trial—including a jury trial and the allocation of the burden of proof—and the right to appeal," *id.* at ¶ 40, 156 P.3d at 790, and like the Duncan nonparties in the *Tremco* case, Black Diamond Developers, LLC has "never received these protections" to date in this litigation.  *Id.*

Absent the joinder of Black Diamond Developers, LLC as a defendant with proper service of process,[44] and the pleading of a cause of action for fraudulent transfer under the UFTA to which it may respond, this court simply cannot bind either Black Diamond Developers, LLC or DHC to the relief now sought by the plaintiffs, namely a declaration as a matter of law "that the Black Diamond Transfers were fraudulent as to all of Defendant DHC's creditors whose claims arose either before or after the transfers," and an injunction against "both Defendant DHC and Black Diamond Developers from any further transfer, sale, assignment, or other disposition of any of the DHC Assets."[45]

---

[44]Plaintiffs' counsel suggests that they have satisfied the pleading requirement by inserting language referring to fraudulent transfers in at least one proposed pretrial order.  (*See* Transcript of Hearing, dated February 27, 2013, at 49:11-17, 55:3-13.)  Mere reference to fraudulent transfer in a draft pretrial order alone cannot establish this court's jurisdiction over Black Diamond Developers, LLC, or fulfill the requirements of due process outlined in *Tremco*. *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110-11 (1969); *PGM, Inc. v. Westchester Inv. Partners, Ltd.*, 2000 UT App 20, ¶ 8, 995 P.2d 1252, 1255 ("*Zenith* and its progeny stand for the proposition that judgment against a party is binding against privies to those parties, but those privies must be permitted their day in court to contest their status as privies.") (holding that court finding of alter ego status not binding on nonparty entity).

[45](Motion for Partial Summary Judgment re Fraudulent Transfer, filed December 28,
(continued...)

-20-

DHC may well be correct that the plaintiffs have failed to meet their initial burden under Rule 56 to show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), because material facts concerning the DHC transfers remain in genuine dispute. But even more fundamentally, the plaintiffs cannot show that they are entitled to judgment as a matter of law on a cause of action they did not plead, particularly as against an entity that they have not joined as a defendant to this lawsuit.[46] For these reasons, the plaintiffs' Motion for Partial Summary Judgment re: Fraudulent Transfer (CM/ECF No. 331), must be denied.

## MOTION FOR ENTRY OF ORDERS OF DISMISSAL

Defendant DHC moves to dismiss the plaintiffs' (and their predecessor in interests') claims pleaded in this action because the "[Black Diamond Construction I] Business Trust has no interest in the construction agreement between DHC and C&A and no privity with DHC as to that agreement," and because "that agreement was never assigned by C&A, nor could it have been, without DHC's written consent"; DHC also asserts that "the Business Trust has no lien

---

[45](...continued)
2012 (CM/ECF No. 331), at 11.)

[46]As DHC's alleged initial transferee, Black Diamond Developers, LLC, would be a necessary party for any of the substantive relief that the plaintiffs seek under the UFTA. *See PGM, Inc. v. Westchester Inv. Partners, Ltd.*, 2000 UT App 20, ¶ 8 & n.4, 995 P.2d 1252, 1255, and cases cited therein; *Tanaka v. Nagata*, 76 Haw. 32, 36-37, 868 P.2d 450, 454-55 (1994).
Given that the challenged DHC transfers allegedly occurred in September and November of 2008, the plaintiffs may now be out of time to plead a fraudulent transfer action against either DHC or Black Diamond Developers, LLC. The UFTA has its own four-year statute of limitations, with limited "discovery" exceptions under Utah law. *See Rappleye v. Rappleye*, 2004 UT App 290, ¶¶ 17-33, 99 P.3d 348, 353-57 (discussing the UFTA limitations statute and statutory and common-law "discovery" rules). But that question is not squarely before this court because to date, no party has actually sought leave to plead a UFTA claim or join additional defendants in this case. *See* Fed. R. Civ. P. 8(a), 9(b), 15(a), 19.

rights," and has suffered no injury requiring redress, leaving the plaintiff Trust without standing

to pursue this litigation.[47]

Plaintiffs respond that "the Construction Agreement contains no language restricting

C&A's right to assign the agreement, or to assign claims for damages arising out of the

agreement," and "as the assignee of C&A's rights against the Defendants here, Black Diamond is

the real party in interest with respect to those rights."[48]  They submit that "Defendant DHC's

contractual breaches and other wrongs have therefore resulted in an injury in fact that is traceable

to Defendant DHC's conduct and that could be redressed by a decision from this Court which is

favorable to Black Diamond," and plaintiffs thus have standing to litigate this action.[49]

In supplemental briefing filed after the February 27, 2013 hearing, the defendants

elaborated upon their theories as to the defects in the current plaintiffs' standing, namely that the

Black Diamond Construction 1 Business Trust does not have all of the rights necessary to

---

[47](Motion for Entry of Orders of Dismissal as to Plaintiffs C&A Construction Company, Inc.; Lynn A. Gilbert, or His Successor, as Trustee of the Black Diamond Construction Trust; and the Black Diamond Construction 1 Business Trust, filed December 28, 2012 (CM/ECF No. 328), at 2-3.)

[48](Opposition to Defendants' Motion for Entry of Orders of Dismissal as to Plaintiffs C&A Construction Company, Inc. et al., filed January 14, 2013 (CM/ECF No. 335), at 5.)

[49](*Id.* at 6 (citing *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 285 (2008) ("Lawsuits by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'"), and Order and Judgment, *C&A Construction Company, et al. v. DHC Development, et al.*, Case No. 11-4139 (10th Cir., decided November 5, 2012), at 31 ("DHC argues that BDCBT lacks standing . . . . This ignores the potential effect of BDCBT's . . . claims. Assuming BDCBT is successful [on remand], BDCBT may . . . be entitled to an affirmative recovery from DHC.").)

continue to prosecute this action.[50]  "While DHC does not dispute that some "choses in action" (defined below) are assignable, C&A's so-called 'chose in action' was not assignable,"[51] and "the Business Trust has no business purpose, it has no bank account, it has no assets other than the 'chose in action' transferred to it by the Original Trust, it has never issued "certificates" of interest, and it has no connection to DHC's construction project other than the fact that a number of its beneficiaries are C&A's principals."[52]

In *Snow, Nuffer, Engstrom & Drake v. Tanasse*, 1999 UT 49, 980 P.2d 208, the Utah Supreme Court explained that "[a] 'chose in action' has been defined as 'a claim or debt upon which a recovery may be made in a lawsuit.  It is not a present possession, but merely a right to sue; it becomes a "possessory thing" only upon successful completion of a lawsuit.'" 199 UT 49, at ¶ 8, 980 P.2d at 210 (quoting *Barron's Law Dictionary* 71 (3d ed. 1991)).  Utah law thus does not require that a legal claim be liquidated to a fixed sum before it may be assigned, transferred

---

[50](Supplemental Briefing re Legitimacy of Transfers, filed March 27, 2013 (CM/ECF No. 344), at 3.)

[51](*Id.*)

[52](*Id.* at 5.)  The defendants raise some intriguing questions concerning the requisites and validity of the Black Diamond Construction 1 Business Trust under Utah law, *e.g.*, whether it actually conducts a "business."  But remembering that "[t]he essential attribute of a business trust is that the property is transferred to trustees, who manage it for the benefit of the beneficiaries," 12A C.J.S. *Business Trusts* § 2 (2004) (footnotes omitted), it is the Trustee who actually holds the "choses in action" originally assigned by C&A, and as a party plaintiff in his own right, he likely has standing to assert them in this proceeding in any event.  *See also* 16A *Fletcher Cyc. Corp.* § 8228, at 505 (2012) (explaining that a "business trust" is "a business organization created by a deed of trust or declaration of trust under which business enterprise assets are transferred to trustees to manage for the benefit of individuals holding certificates evidencing beneficial interests in the trust estate," and that "[t]he trustees have legal title to the property in trust" (footnotes omitted)).  At this point, the court simply defers on the question of the Trust's *bona fide* existence.

or sold.

> Indeed, causes of action are regularly sold.  *See, e.g.*, *Warner v. DMG Color, Inc.*, 2000 UT 102, ¶¶ 3-4, 9, 11, 17, 20 P.3d 868.  For example, in *Tanasse*, we held that pending claims could be acquired through attachment and execution, and then sold pursuant to a sheriff's sale.  1999 UT 49 at ¶ 9.  After claims have been sold, a new party steps into the shoes of the former plaintiff, and the claims remain cognizable, *see Olsen v. Chappell*, 20 Utah 2d 115, 118, 433 P.2d 1011, 1014 (1967), but the sale cuts off the former plaintiff's right to pursue those claims.  *Warner*, 2000 UT 102 at ¶ 18; *see also Bauer v. Sweeny*, 964 F.2d 305, 308 (4th Cir. 1992).  Once acquired by another, the new litigant has the right to determine the course and scope of the litigation of the claims purchased, including the right to move to dismiss the pending claims.

*Applied Medical Technologies, Inc. v. Eames*, 2002 UT 18, ¶ 17, 44 P.3d 699, 702-03.

C&A's claim against DHC and Danko for breach of contract (in all of its iterations) and tortious interference are "choses in action" within the *Tanasse* definition, but the question remains whether they are assignable.  At this point, "[a]ny right of action arising out of contract may be assigned, unless assignment is prohibited by statute, public policy, or a contractual prohibition, or unless it is for the performance of personal services, or involves personal trust and confidence."  6A C.J.S. *Assignments* § 46 (2004) (footnotes omitted); *see also SME Indus., Inc. v. Thompson, Ventulett, Stainback & Associates, Inc.*, 2001 UT 54, ¶ 11, 28 P.3d 669 ("[A] contract provision prohibiting the assignment of the contract itself, or of rights and privileges under the contract, does not, unless a different intention is manifested, prohibit the assignment of a claim for damages on account of breach of the contract."); *Fuller v. Favorite Theaters Co. of Salt Lake*, 119 Utah 570, 230 P.2d 335 (1951) (holding that contract provision "prohibiting the assignability of the contract itself does not affect the assignability of a cause of action which has arisen from the breach").  DHC does not point to any statute, public policy or contract language prohibiting the assignment of claims for breach of contract of the kind pleaded by C&A in its

-24-

Amended Complaint.

As to C&A's tort claims, the plaintiffs correctly point out that the common-law rule prohibiting the assignment of tort causes of action has largely given way to "'[t]he trend of judicial opinion'" that "'has been to enlarge rather than restrict the causes that may be assigned.'" *Westgate Resorts, Ltd. v. Consumer Protection Group, LLC*, 2012 UT 55, ¶ 33, 285 P.3d 1219, 1227 (quoting *Mayer v. Rankin*, 91 Utah 193, 63 P.2d 611, 616 (1936)). "'The rule of nonassignability no longer extends to all actions arising [in tort],'" *id.*,[53] and "[w]here property is sought to be recovered, claims for fraud are assignable" where otherwise they may not be. 2012 UT 55, ¶ 35, 285 P.3d at 1228; *see also Mayer v. Rankin*, 63 P.2d at 616-17 ("[w]hile a mere naked right to recover for fraud is not assignable, . . . the weight of authority and . . . sound legal principles [persuade us that] an assignment is upheld when it carries with it a subsisting substantial right to property independent of the right to sue for fraud."); *Russell/Packard Development, Inc. v. Carson*,  2003 UT App 316, 78 P.3d 616 (following *Mayer* in concluding that a tort cause of action for fraud was assignable where the plaintiff's assignor was fraudulently induced to enter a real estate purchase contract in which it agreed to pay a higher price than the property was worth, and sought to recover the purchase money paid).

Where a tort cause of action does not also carry "a subsisting substantial right to property independent of the right to sue" in tort, the question of assignability proves more problematic:

_____

[53]*Mayer* cited to *Wines v. Rio Grande W. Ry. Co.*, 9 Utah 228, 33 P. 1042, 1045 (1893) (holding that an action for negligent destruction of property is assignable); *National Union Fire Ins. Co. v. Denver & R.G.R. Co.*, 44 Utah 26, 137 P. 653, 654 (1913) (same); *Lawler v. Jennings*, 18 Utah 35, 55 P. 60, 61 (1898) (holding that an action for money overpaid by mutual mistake is assignable); *Baglin v. Earl-Eagle Min. Co.*, 54 Utah 572, 184 P. 190, 193 (1919) (holding that a cause of action for conversion is assignable).

> Generally, in the absence of a statute modifying the rule, a right of action for a purely personal tort is not subject to assignment before it is reduced to judgment, as the assignment of such a claim is against public policy. Claims which arise from a wrong done to the person, the reputation, or the feelings of the injured party, or to a person's commercial credit, are not assignable. Unassignable causes of action for personal torts include those for personal injury, defamation, invasion of privacy, false arrest or imprisonment, abuse of process, malicious prosecution, conspiracy to injure another's business, unfair and deceptive trade practices, fraud, and emotional distress.

6A C.J.S. *Assignments* § 53 (2004) (footnotes omitted).  The Utah courts have expressed similar views.  *See, e.g., State Farm Mut. Ins. Co. v. Farmers Ins. Exchange*, 22 Utah 2d 183, 450 P.2d 458, 459 (Utah 1969) (observing that "it is generally conceded that a claim or cause of action for personal injuries arising out of tort is not assignable.  Arguments are persuasive for and against any such distinction. Nonetheless, we presently are constrained to affirm the universal rule of non-assignability of personal injury claims . . . .")

The plaintiffs argue that C&A's claims for tortious interference with contract, interference with economic relations, and injurious falsehood should be deemed assignable because choses in action are generally assignable.[54]  For its part, DHC cites to no Utah case authority on the assignability of these tort causes of action, and the authorities that DHC does cite shed little useful light on this question.

Following the lead of *Westgate Resorts, Ltd. v. Consumer Protection Group, LLC*, 2012

---

[54](Plaintiff's Response to Supplemental Briefing re Legitimacy of Transfers, filed May 10, 2013 (CM/ECF No. 360), at 15 (citing *Restatement (Second) of Contracts* § 317, comment c (1981), and 6 Am. Jur. 2d *Assignments* § 44 (2008)).)

Curiously, plaintiffs' counsel discusses the assignability of "C&A's claims for fraudulent inducement and fraudulent transfer" which "sought recovery of property which DHC has wrongfully obtained or held onto at C&A's expense."  (*Id.* at 15.)  Yet no such claims are pleaded in C&A's Amended Complaint (CM/ECF No. 33)—a pleading from which the words "fraud" and "fraudulent" are entirely absent.

UT 55, 285 P.3d 1219—a case relied upon by the plaintiffs—holding that tort causes of action

may be assignable "where property is sought to be recovered," *id.* at ¶ 35, 285 P.3d at 1228,

C&A's pleaded claims for tortious interference with contract, interference with economic

relations, and injurious falsehood do *not* expressly seek the return or recovery of any property

(*e.g.*, purchase money paid)—in contrast to the claims pleaded in *Westgate Resorts*,

*Russell/Packard Development*, and *Mayer v. Rankin*—and thus these causes of action are not

assignable,[55] at least prior to being liquidated to a fixed amount, as in a judgment.[56]

In light of the foregoing, DHC's Motion for Entry of Orders of Dismissal (CM/ECF No.

328) will be granted in part (as to C&A's tort claims) and denied as to breach of contract and

related causes of action pleaded in C&A's Amended Complaint, including unjust enrichment.[57]

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' Motion for Partial Summary Judgment (CM/ECF No. 362) asserts their

entitled to judgment as a matter of law on their claims that DHC is liable for breach of contract

for nonpayment, providing defective plans and specifications, dealing directly with C&A

---

[55]*See Sprague v. California Pacific Bankers & Ins. Ltd.*, 102 Hawai'i 189, 201, 74 P.3d 12, 24 (2003) (holding that damages claims for injury to commercial credit and business reputation as well as lost business opportunities were personal and unassignable); *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 84 n.4, 61 Cal. Rptr. 2d 497, 503 n.4 (2d Dist. 1997) (noting that " a defamation cause of action, as arising from the purely personal right of the reputation of the one injured, is not assignable"); 6 Am. Jur. 2d *Assignments* §§ 53, 56 (2008).

[56]*Cf. McKee v. National Union Fire Ins. Co.*, 15 Cal. App. 4th 282, 287-88, 19 Cal. Rptr. 2d 286, 290 (2d Dist. 1993) (citing *Pacific Gas & Elec. Co. v. Nakano*, 12 Cal.2d 711, 713, 87 P.2d 700, 701-702 (1939)).

[57]At this point, the Utah law concerning the assignability of tort causes of action is less than completely clear, but the plaintiffs ultimately bear the burden of demonstrating the validity of the assignment of C&A's claims.

Construction Company, Inc.'s ("C&A") subcontractors and hiring independent subcontractors. Having prevailed on an appeal from a summary disposition in which they insisted that many facts bearing upon the merits remained in genuine dispute—indeed, were "hotly disputed by the parties," according to the court of appeals—the plaintiffs now revive their earlier assertion that they are yet entitled to summary judgment on C&A's breach of contract claims.[58]  Plaintiffs' recent motion also follows close on the heels of their counsel's assertion at the February 27th hearing that "[w]e should finish the pretrial proceedings, we should set a date for trial, and we should submit these issues to a jury."[59]

Given the "highly-contentious factual issues and disputes"[60] that bear upon the merits of this case, and the clear import of the court of appeals' mandate concerning the ripeness for summary disposition of those merits,[61] this court is persuaded that plaintiffs' counsel charted the correct course at the February 27th hearing and that the matter should now proceed to a final pretrial conference.  Plaintiffs remain free to distinguish disputed facts from uncontroverted facts in the context of pretrial, and the substance of their most recent Rule 56 motion may be raised in that context.[62]

---

[58](*See* Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment re Wrongful Termination and Delay, filed March 15, 2010 (CM/ECF No. 157).)

[59](Transcript of Hearing, dated February 27, 2013, at 15:7-9 (Mr. Worthy).)

[60](*See* Order and Judgment, *C&A Construction Company, et al. v. DHC Development, et al.*, Case No. 11-4139 (10th Cir., decided November 5, 2012), at 31.)

[61](*Id.* at 34-35 (quoting *Simon v. City of Clute, Tex.*, 825 F.2d 940, 942-43 (5th Cir. 1987)).)

[62]As this court suggested at the February 27th hearing,

(continued...)

-28-

Plaintiffs' Motion for Partial Summary Judgment (CM/ECF No. 362) is therefore denied without prejudice to further consideration of the matters addressed therein in the context of the final pretrial conference.

## MOTION FOR TRIAL DATE

On the eve of the February 27th hearing, plaintiffs' counsel filed a Motion for Trial Date (CM/ECF No. 341), asserting that "[p]rior to the Court's Final Pretrial Conference on February 23, 2011, and the Court's subsequent judgment of June 9, 2011 (the "June 2011 Judgment"), this matter was in the final stages of pretrial preparations for trial by jury. With the June 2011 Judgment now vacated, this matter should be set for trial."

At the February 27th hearing, this court pointed out that "[w]e haven't fixed a trial date.  I haven't fixed one.  I don't fix one until we pretry a matter to see if there is anything to try."[63] This court's view of the question of a trial date has not changed, and it remains a matter to be considered in the context of the final pretrial conference.   For that reason, the plaintiffs' Motion for Trial Date (CM/ECF No. 341) is denied.

For the reasons explained above,

**IT IS ORDERED** that for the reasons explained in this court's Memorandum Opinion & Order, filed June 7, 2011 (CM/ECF No. 234), and for clarity of the record, the Black Diamond

---

[62](...continued)
THE COURT: Let's see if we've got anything to try. Let's deal with one of my notorious pretrial conferences if we've got anything to try.  That's one of the difficulties we've had before, the ability to identify and define with great particularly what it is there is to try. . . .

(Transcript of Hearing, dated February 27, 2013, at 77:20-24.)

[63](*Id.* at 79:4-6 (the Court).)

-29-

Construction 1 Business Trust, and Lynn A. Gilbert, in his capacity as its Trustee, are hereby joined as parties Plaintiff in the above-captioned matter *nunc pro tunc* to June 7, 2011;

**IT IS FURTHER ORDERED** that the plaintiffs' Motion for Restoration of Alternate Security (CM/ECF No. 325) is DENIED;

**IT IS FURTHER ORDERED** that the plaintiffs' Objection and Motion to Strike Defendants' Cross-motion for Entry of Orders of Dismissal and Judgment (CM/ECF No. 327) is DENIED;

**IT IS FURTHER ORDERED** that the defendants' Motion for Stay and for Expedited Consideration (CM/ECF No. 329) is DENIED;

**IT IS FURTHER ORDERED** that the plaintiffs' Motion for Partial Summary Judgment re: Fraudulent Transfer (CM/ECF No. 331) is DENIED;

**IT IS FURTHER ORDERED** that DHC's Motion for Entry of Orders of Dismissal (CM/ECF No. 328) is GRANTED IN PART (as to C&A's tort claims) and otherwise DENIED IN PART;

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (CM/ECF No. 362) is DENIED without prejudice to further consideration of the matters addressed therein in the context of the Final Pretrial Conference;

**IT IS FURTHER ORDERED** that the plaintiffs' Motion for Trial Date (CM/ECF No. 341) is DENIED; and

**IT IS FURTHER ORDERED** that the above-captioned action is hereby calendared for a Final Pretrial Conference on **October 9, 2013**, beginning at **1:30 p.m.**; counsel must prepare and submit an agreed form of proposed Pretrial Order, signed by all counsel and *pro se* parties, to the

court not later than **October 4, 2013**.  *See* DUCivR 16-1(e) & Appendix IV.

    DATED this \_\_\_ day of September, 2013.

BY THE COURT:

_____<br>BRUCE S. JENKINS<br>United States Senior District Judge

court not later than **October 4, 2013**. *See* DUCivR 16-1(e) & Appendix IV.

DATED this 12th day of September, 2013.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge